## Gish Banking Company v. Leachman's Administrator, et al.

(Decided March 23, 1915.)

### Appeal from Muhlenberg Circuit Court.

1. Banks and Banking—Joint Deposits—How Payment Made.—Where several persons deposit a sum of money in a bank to their joint credit, the bank, before paying out the money, must have a check signed by each of the depositors.

2. Banks and Banking—Joint Deposits.—Where a deposit is made to several persons, jointly, in the absence of a showing to the contrary, the presumption may be indulged, that each one of the depositors has an equal interest in it.

3. Banks and Banking—Joint Deposits.—Where a deposit is made to several persons, jointly, this is notice to the bank, that each one of them has an interest in it, although the bank may not know the extent of their respective interests.

4. Banks and Banking—Joint Deposits.—Where a sum is deposited to the joint credit of two or more persons, and one absconds, or perversely refuses to join his co-depositors in signing a check, the bank is within its rights to refuse to pay out any of it, and a court of equity may be applied to for authority to pay out the money, and the bank may pay out same in accordance with its judgment.

5. Banks and Banking—Joint Deposits.—Where a bank, without authority from a joint depositor, pays out the funds upon a check signed by less than all the depositors, and such joint depositor receives the benefit of the money, he can not make the bank liable to him, if he has received the benefit of his entire interest in the fund.

WALKER WILKINS and O'REAR & WILLIAMS for appellant.

MILLER, SANDIDGE & MALIN and H. N. LUKINS for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The Gish Banking Company is a banking corporation at Central City, and doing a general banking business.

Sam Leachman owned a house and lot in the town, which was conveyed to him by deed on May 25th, 1901. About the year 1908, he executed a note to appellant for a loan, and to secure it, he gave appellant a mortgage upon this house and lot, in which his wife, Lizzie Leachman, joined. She, also, jointly with Sam Leachman, executed the note sued on, but for what purpose, it does not appear, as she seems to have owned no property of her own.

This note was not paid off, but was renewed every four months, until the year 1913. In the meantime Leachman and his wife, and son, and daughter had removed to the city of Louisville. A short time previous to June, 1913, Samuel Leachman entered into a contract with C. H. Blandford & Company, real estate agents in Greenville, to procure a sale for him of the house and lot at the sum of $2,000.00, they to have a commission of five per cent. for making the sale. The contract was in writing, and was signed by Samuel Leachman and his wife, Lizzie Leachman. Shortly before the 19th of June, C. H. Blandford & Company notified Samuel Leachman, that they could make a sale of his property for him for $1,700.00. The real estate firm received a telegram from Louisville, signed by Samuel Leachman and his son, H. T. Leachman, and dated 19th-20th day of June, directing them to make the sale at that price, and to deposit the money, less the commission to be paid, in the bank of Gish Banking Company. The telegram, further, notified the real estate firm, that the deeds were in the Gish Banking Company. As soon as the trade was closed, Samuel Leachman and his wife, Lizzie Leachman, executed a deed to the purchaser for the land, and on the 23rd day of June, C. H. Blandford, representing the real estate firm, after paying the taxes due upon the property, and taking out his commission for the sale, executed a check on the 23rd day of June, to the Gish Banking Company for $1,591.55, on "Account of S. and Lizzie Leachman." In order to prepare this deed, Blandford had gone into the bank and obtained the mortgage, which it held against Leachman, to obtain the boundary of the property. When he deposited this check, D. H. Lam, the cashier of the bank, made out a deposit slip, showing the deposit of $1,211.55, in the bank to the credit of Lizzie Leachman. It seems that the note which Samuel Leachman owed at the bank amounted to $380, which was subtracted from the amount of the check, which left $1,211.55.

When Blandford observed that the deposit slip showed the deposit to be made in the name of Lizzie Leachman, he made objection to having the deposit made in that way, and said that he wanted it deposited to the credit of S. and Lizzie Leachman, as he wanted that day to send to Leachman a statement of the transaction, and to send a deposit ticket, showing what had been done with the money. Thereupon Lam made out a deposit slip, showing that the $1,211.55 was deposited to the credit of S. and Lizzie Leachman, and signed it as cashier of the bank, and delivered it to Blandford, who, upon the same day, sent it in a letter to Leachman, and, also, a statement of his own, showing the amount of money he had received for the land, and the items of taxes paid out of it; and the amount of the note which the bank held against Leachman; and the amount deposited. It seems that this was all the information received by the Leachmans covering the transaction. Thereafter a check for the sum of $70.00, and dated June 21st, and payable to Fred Woodfull, was deposited in the Southern National Bank, in Louisville, Kentucky, by Woodfull, and thereafter presented to the appellant, and was paid by appellant out of the funds deposited with it by C. H. Blandford & Company. This check was signed by Lizzie Leachman, alone. On June 28th, a draft for $1,211.00, signed by Lizzie Leachman, and drawn on the Gish Banking Company, and sent to another bank in Greenville for collection by the Southern National Bank at Louisville, was presented to appellant for payment. The appellant declined to pay this draft, and returned it to the bank at Louisville. This draft was dated June 26th. Thereafter, Woodfull deposited in the Southern National Bank, at Louisville, two other checks, signed by Lizzie Leachman, and drawn on the Gish Banking Company, and payable to Woodfull, one of which was for the sum of $800.00, and dated June 26th, the other was for $200.00, and dated June 30th, and were both deposited by Woodfull for collection in the Southern National Bank on June 30th. These checks were paid out of the funds in the bank, which had been deposited by Blandford to the credit of S. and Lizzie Leachman. This left in the bank to the credit of that fund, $141.55. It should be stated that the Gish Banking Company did not deposit the check to the credit of S. and Lizzie Leachman, as was directed by Blandford,

but deposited it to the credit of Lizzie Leachman, alone, and on the day of the deposit, made out a deposit slip, showing that it was deposited to the credit of Lizzie Leachman, and, also, entered it upon its loose leaf ledger, as being the funds of Lizzie Leachman, which was explained by the cashier of the bank in the following way: That he knew Samuel Leachman to be in very feeble health, and had received information from Leachman's son a short time previous, that he was expected to very shortly die, and that for two years past, in the renewal of his note to the bank, he had not signed his own name, and that he suggested to Blandford, after he had made out the deposit slip at Blandford's request, in the name of S. and Lizzie Leachman, that it was better to deposit it in the name of Lizzie Leachman, alone, and that Blandford agreed thereto, but by mistake he gave to Blandford the slip showing the deposit made to S. and Lizzie Leachman. This, however, was flatly denied by Blandford, who stated the facts to be as first above stated.

It seems that Woodfull and Samuel Leachman were brothers-in-law, their wives being sisters, and that Woodfull, shortly before these transactions, had moved into the house with Leachman in Louisville, and that they had arranged to buy a dwelling house in Louisville, jointly, and were to pay for it on the 2nd day of July. On the 2nd day of July, Woodfull went to the party with whom they had negotiated the purchase of the house and lot, and proposed to him, that if he would extend the time for closing the deal to the 10th of July, that all the money would be paid. This proposition was refused, unless $150.00 of the price was paid then, and Woodfull gave a check for that amount on his account in the Southern National Bank. Between that time and the 8th of July, Woodfull drew all the proceeds of the $200.00 check, the $800.00 check, and the $70.00 check, excepting $11.00 out of the bank, and he and his wife then disappeared out of the country, and do not seem to have been heard of since. All the funds deposited to Woodfull in the Southern National Bank were the proceeds of the three above-named checks. Leachman's son, in order to try to carry out the trade to purchase the property in Louisville, telegraphed to the Gish Banking Company to know what sum of money was there to the credit of S. and Lizzie Leachman, and received informa-

tion that there was only $140.00 there, and that it had been drawn out by checks payable to Woodfull.

Thereafter, Sam Leachman and Lizzie Leachman instituted this suit in the Muhlenberg Circuit Court against the Gish Banking Company, to recover of it the sum of $1,211.55, which they alleged had been deposited there to their joint credit, and that the bank refused to pay it. The bank filed an answer, traversing the facts, that the appellees had deposited any money there, or that either of them had made any deposit there, except in the following way: That on the 23rd day of June, 1913, C. H. Blandford deposited with it the sum of $1,211.55, to the credit of Lizzie Leachman, and that by mistake, the cashier had written upon the duplicate deposit slip, which it delivered to Blandford, the names, S. and Lizzie Leachman, when in fact, the deposit and account were made in the name of Lizzie Leachman; and that since that time it had paid out upon checks drawn by Lizzie Leachman, and payable to Fred Woodfull, the sums of $70.00, $800.00, and $200.00; that there was left on deposit of said account $141.55, and that Lizzie Leachman had never made any demand for the payment of that sum to her. It further plead, that the checks upon which the money was paid, were written and signed by Lizzie Leachman, and that the appellees had full knowledge of the execution of the checks, and used and received the benefits of the money, and were, therefore, estopped to make any further claim against it for the money. The appellee, by reply, traversed all of the allegations of the answer, and denied that the $800.00 check, or the $200.00 check were, either of them, drawn or signed by Lizzie Leachman, or that they had received any of said money, or any benefit of it, or had any knowledge that said checks were written, or drawn, or signed, or that the appellant had paid any of the checks, or that they had received or used any of the money.

Upon the trial of the case, a jury was not demanded, and the circuit court adjudged that the appellees recover the amount, that they had sued for, less the amounts of the $70.00 check, and the $150.00 check given by Woodfull as a payment on the house and lot in Louisville. The trial judge filed an opinion, setting out his conclusions of law separate from his finding of facts, and the appellant having filed grounds for a new trial, its motion was overruled by the court. It excepted to

the judgment of the court against it, and to each of the conclusions of law and finding of facts, and has appealed to this court.

The proof in this case, without controversy, shows that the entire sum of money deposited by Blandford & Company, was the property of Samuel Leachman. The appellant had actual knowledge that the land for the sale of which the money was obtained, was the property of Samuel Leachman, and that Lizzie Leachman had no interest in it, whatever, except that she had a potential right of dower in the land, with which she parted, when she executed the deed. The appellant paid the note, which Samuel Leachman and Lizzie Leachman executed to it, out of the funds. However, Blandford & Company, being the agent of appellees, and directing the deposit to be made to the use of the appellees, and notifying Samuel Leachman of this fact, and he acquiescing in same, he could not be heard to complain of the money being so deposited; neither could he complain, if the bank should have paid out the money upon checks signed by him and Lizzie Leachman. Whether the deposit was made to the joint credit of S. and Lizzie Leachman, was an issue of fact determined by the trial court, and its judgment was that the funds were so deposited. The evidence and all the circumstances seem to fully warrant that conclusion. The funds being so deposited, the bank, in the absence of special authority so to do, was not authorized to pay out the funds, except upon a check signed by both Samuel and Lizzie Leachman. The appellant does not claim or pretend that it had any authority or permission from Samuel Leachman to pay out the funds upon checks signed by Lizzie Leachman, alone. It relies for its authority so to do, upon the claim, that Blandford & Company, being the agents of S. and Lizzie Leachman, authorized it to deposit the check to the credit of Lizzie Leachman, alone. This issue of fact was, however, determined against appellant, as above stated.

Funds deposited in a bank to the credit of a partnership, may be lawfully paid out upon checks signed with the partnership name, although it is done by one of the partners. This may be done, because each one of the partners is the agent for the partnership, and the fund is not jointly, but singly owned. The joint owners of property are not, by reason of that fact alone, agents for each other, for the purpose of a sale or disposition of

the property. As to whether a bank is authorized to pay out funds, deposited to the joint credit of two or more persons, upon checks signed by some of the depositors, and not by others, was before this court in the case of Columbia Finance & Trust Company v. First National Bank, 116 Ky., 374. In that case, a deposit had been made by three persons to their joint credit, and with a parol agreement between themselves and the bank, that the funds were to be drawn out only upon checks which were signed by all of the three. This court said: ''The purpose of depositing the money, as it was, to the credit of the three, was to prevent any one of them from appropriating it without the consent of the other two. The form of deposit showed this, outside of the parol agreement. The rule is that, if several persons make a deposit to their joint credit, the bank must have the signatures of all of them appended to the check before paying it, or to take the risk. 2 Morse on Banking, Sections 425-436.'' In the absence of any parol agreement, however, it seems that the rights and liabilities of the parties in the case, *supra,* would have been the same, upon the common and well known principles of the common law. The text writers all concur in the doctrine, that where a deposit is made to the joint credit of several persons, the bank cannot justify itself in paying out the funds, except upon a check to which the names of all the depositors are appended. Bolles Modern Law of Banking, 2, 593; Daniel on Negotiable Instruments, 2, 1612. This is the common sense applying to the proposition. When a deposit is made to a joint account, notice is thereby fully given to the bank, that each of the persons has an interest in the funds, although the bank may not know the extent of the interest of any particular one. To honor checks drawn upon the joint fund by any one of the depositors, would enable such a one to appropriate the entire fund, without the knowledge or consent of his co-depositors. If one or more of the persons making the joint deposit, should abscond, and could not be found, or if one or more should perversely refuse to join his co-depositors in signing checks upon the joint fund, the bank would be fully within its rights to refuse to pay out the funds, until a court of equity should be applied to, and the bank could then pay out the funds in accordance with its directions. While, it has been held that where a deposit is made to the joint account of two

or more persons, and there is nothing to show that the interests of the parties in the deposit are otherwise, the presumption will be indulged, that each of them has an interest in it, equal to the interest of any other. It would necessarily follow as a logical sequence, that, if a bank, without authority, should pay out the deposit made to the joint account of several persons, its liability to each of the joint depositors would be in accordance with the interest of the depositor in the joint deposit. If one of the joint depositors had received the benefit of any part of the fund, although improperly paid out, equal to his interest in the deposit, in good conscience, he would have no grievance against the bank. Neiman v. Beacon Trust Co., 64 American St. Rep., 315.

Samuel Leachman and Lizzie Leachman were not a partnership. The bank had no authority from Samuel Leachman to pay out the fund deposited to their joint account upon the check of Lizzie Leachman alone. The entire deposit was the property of Samuel Leachman, and he should, therefore, recover the entire sum from the appellant, unless he received the benefit of the funds, although wrongfully paid out by the bank. The proof shows very conclusively, that Samuel Leachman did not receive any benefits from the money paid by appellant on the $200.00 check, nor the $800.00 check, which were signed with the name of Lizzie Leachman, except that Woodfull paid $150.00 of the proceeds of those checks, upon the purchase price of the house, which he and Samuel Leachman were contemplating buying in Louisville. Samuel Leachman was occupying this house, and when the owner learned the facts in the case, he credited this sum upon his account for rent against Samuel Leachman. Samuel Leachman thus received the benefit of it. Neither did Lizzie Leachman receive any of the benefits of any of these checks, which she is alleged to have signed, in favor of Woodfull. Woodfull seems to have received $1,070.00 of the money, upon the three checks, alleged to have been signed by Lizzie Leachman, and in four or five days, squandered it, and drew it from the bank together, and then fled the country. Lizzie Leachman admitted executing the $70.00 check, and proof conduces to show that Samuel Leachman assented to this, and the court below held that the bank was entitled to credit by it. Samuel Leachman did not except to that finding, and his personal representative is not complaining of

it here. Lizzie Leachman denied that she signed the $200.00 check, or the $800.00 check. No one saw her sign them, nor is any circumstance proven which conduces to prove that she did so. A number of persons alleged to have been experts in regard to handwriting testified, that in their opinion, the signature made to these checks is the handwriting of Lizzie Leachman. They arrived at this conclusion, not from being acquainted with her handwriting, or from having seen her write, but from a comparison of the signature to the $800.00 check and the $200.00 check, with the signature to the $70.00 check, and the contract authorizing Blandford & Company to sell the house and lot. The trial court, as one of its findings of fact, found that she did sign the $800.00 check and the $200.00 check. The fact that the $800.00 check bears the same date of the $1,211.55 draft, which it is alleged that Lizzie Leachman signed, although she denies same, is a strong circumstance in favor of the truth of her denial, that she did not sign the $800.00 check. Woodfull appears to have been a great rascal, and he either forged the signature of Lizzie Leachman to the $800.00 and $200.00 checks, or, else, by some fraudulent device, procured her signature to them, but with our views of the law of this case, it is immaterial whether Lizzie Leachman executed the checks or not. The deposit being made to the joint account of Samuel Leachman and Lizzie Leachman, the bank was not authorized to pay out the funds upon the checks of Lizzie Leachman, alone, and in doing so, took whatever risk that might follow as to the ownership of the fund. It appearing, furthermore, that Samuel Leachman, was the owner of the fund, and that Lizzie Leachman had no interest in it, Samuel Leachman is entitled to recover of appellant an amount equal to all of it, of which he did not receive the benefit. There is no doubt, however, if the bank had have paid out the funds upon a check signed by both Samuel and Lizzie Leachman, it would have fully discharged its obligation.

The judgment should have been rendered in favor of Samuel Leachman, alone, as the written opinion of the trial judge, adjudges that he is entitled to the recovery, but it seems from a clerical misprison the judgment is entered in favor of the plaintiff, which might be construed to include Lizzie Leachman, but the appellant is in no way prejudiced by this fact, and this might have

been corrected in the court below. The only person, whom the fact can prejudice, was Samuel Leachman, and neither he nor his personal representative complains of it here. Gardner v. Alexander, 159 Ky., 713.

The judgment below being in accordance with the views set out in this opinion, it is therefore affirmed.