Guy S. MARTIN and Helene M. Martin,
Plaintiffs-Respondents,

v.

Walter HIEKEN, d/b/a Plaza Real Estate
Company, Defendant-Appellant.

No. 30492.

St. Louis Court of Appeals.

Missouri.

Nov. 15, 1960.

**162**

———◆———

Ziercher, Tzinberg, Human & Michenfelder, George E. Schaaf, Clayton, for defendant-appellant.

Frederick R. Rodgers, St. Louis, for plaintiffs-respondents.

DOERNER, Commissioner.

Plaintiffs seek to recover damages because of defendant's alleged breach of his duty as plaintiffs' real estate agent. The action was initiated in the Magistrate Court of the City of St. Louis, where judgment was rendered in favor of defendant. Upon trial de novo in the circuit court, without a jury, plaintiffs obtained a judgment for $566.82, and defendant appealed.

The essential facts are these: Defendant, a real estate broker, in the spring of 1955, was employed by Mr. and Mrs. L. R. McCord to sell their resort property, called the Hi Ho Hideout, situated on the Lake of the Ozarks. The listed price was $39,-000. Plaintiff Guy S. Martin, at all times acting for himself and his wife, answered defendant's advertisement, and conferred with defendant in Martin's office on June 17, 1955. Martin decided to propose an exchange of properties, with some cash to boot, and at Martin's direction defendant filled out, in triplicate, a printed form headed "Exchange Contract." By its terms Martin offered to exchange a frame bungalow he owned, located on Crown Drive in Riverview, St. Louis County, for the McCord's property, and to pay $4,893.25 in cash in addition. Each party was to take the other's property subject to certain deeds of trust, the contract reciting that there were two on the Hi Ho property. At the same conference Martin likewise employed defendant as his broker, and the written proposal stipulated that each party was to pay defendant a commission of 5% on each parcel. As filled out, the proposal provided that the sale was to be closed on July 15, 1955, and in the body of the printed form it was stipulated that the closing was to be made " * * * under the usual closing practices of the St. Louis Real Estate Board set forth on the reverse side hereof, and made part of this contract." The closing practices of that Board, as printed on the reverse side of the form, included, among others, the provision that "Rents, taxes, interest, insurance, water rates, gas and electric bills, coal supply and apartment expenses and salaries, if any, are to be adjusted to date of closing on the basis of 30 days to the month, seller to have the last day; * * *."

Martin signed all copies of the proposed contract and paid earnest money of $250 to defendant. Defendant took all three copies of the offer with him. On the next day, defendant presented the offer to the McCords. According to defendant, the McCords rejected Martin's offer in its entirety, but were willing to make a counter-offer. Their counter-proposal was that they would agree to the exchange of the properties, but that Martin was in addition to pay $7,093.25 in cash; that Martin was to assume the two deeds of trust which were encumbrances on the Hi Ho property; and that there was to be no adjustment of the interest, taxes or insurance accrued to the date of closing. Instead of filling out a new exchange form, defendant crossed out the figures "$4,893.25" on the face of the one offered to the McCords, and wrote above it the figures "$7,093.25." He also deleted with a pen the words "taxes, interest," "water rates," "coal supply and apartment expenses and salaries," from the quoted part of the closing practices printed on the reverse side of the form, so that as altered the items to be adjusted to the date of closing were "Rents, insurance, gas and electric bills." This change on the back was not initialled by the McCords, but they signed the contract on its face, and initialled the change in the cash figure.

Defendant then conferred with Martin on June 20. The evidence of the parties is in direct conflict as to what was discussed on that occasion. According to Martin, defendant told him only that the McCords wanted cash of $7,093.25 to make the exchange, and said nothing about the alteration of the adjustment clause. According to defendant, he informed Martin of both of those elements of the McCord's counter-offer, and that with respect to payment of the accrued interest Martin said, "* * * he would be happy to pay the interest on the loans, since he already thought that was understood when he agreed to assume the existing financing." However, when defendant was asked on direct examination whether he had called Martin's attention to the alteration of the adjustment clause, his answer was, "I don't recall whether I called that to his attention specifically, since he had already read the contract; he had looked it all over completely, and I don't know if I specifically called it to his attention." Whether defendant meant by this answer that Martin had read the contract when he signed it on June 17 (at which time, of course, no alteration had been made), or at the conference held on June 20, was not developed by any further evidence.

Both parties are in accord that Martin refused to pay any greater sum than the $4,893.25 he had originally offered. Defendant testified that he also conferred with the McCords later in the day on June 20, and advised them that Martin had rejected their counter-offer and would pay no greater sum in cash than Martin's original offer of $4,893.25. The McCords then accepted that figure, and in their presence defendant drew a line through the figure "$7,093.25," inserted in ink that of "$4,893.25," and had the McCords initial it.

From a chronological standpoint the evidence becomes sketchy and confusing at this point. Defendant had further conferences with Martin, with the McCords, and at one point, according to the defendant, the whole deal was about to be called off at a conference between Martin, the McCords, and defendant, at defendant's office. Since it would serve no useful purpose to try to relate, step by step, the further proposals, counter-proposals, and additions which occurred on and after June 20, 1955, nor to try to decipher the amendments, alterations, changes and supplements made in and to the original exchange contract, it is sufficient for the purposes of this opinion to state that an apparent meeting of the minds between Martin and the McCords was reached early in July, perhaps on July 1. As best we can make out from the testimony and the written exchange contract, which was rendered almost illegible by the numerous changes and interlineations made in ink, the agreement then provided for the exchange of properties, for the plaintiffs

to pay the McCords $2,000 in cash, and to execute to defendant a note for $2,763.45 secured by a third deed of trust on the Hi Ho resort, out of which latter amount the McCords were to receive the sum of $446.79 when the note was paid.

We use the phrase "apparent meeting of the minds," because of the issue of fact as to whether defendant had informed plaintiff, on June 20, of the alteration of the adjustment clause. Martin testified that the defendant never gave him a copy of the supposed agreement until July 5, at which time Martin put it in his safe without reading it. As the abstract was not ready by July 15, the date specified for the closing, Martin obtained permission from the defendant and the McCords to take possession of the Hi Ho property. Both parties agree that the abstract was not delivered to Martin until July 28. Upon examining it, Martin discovered that the principal and interest payments on the two deeds of trust on the Hi Ho property were due in October, 1955, (which he had not known before) and Martin telephoned defendant on that day to point out that the interest should be adjusted to July 15. It was during that telephone conversation, Martin testified, that he learned for the first time of the alteration defendant had made of the adjustment provision. Martin stated that he protested, but that defendant insisted plaintiff was bound by the change. Defendant admitted that the first time Martin objected to assuming all of the interest was on July 28, but his testimony was that he contended in that conversation that Martin had previously agreed to pay it in return for a concession from the McCords regarding the cash figure, and that Martin was bound by his written contract.

After that telephone conversation, Martin informed the defendant by both oral and written communications, that the alteration of the adjustment clause had been made without Martin's knowledge or consent; that he would not close the transaction on that basis, but would do so only in accordance with the terms of his original

offer; and that if that was not done he was demanding the return of the earnest money he had deposited with defendant. Defendant refused to return the money, and Martin then dealt directly with the McCords. The interest accrued to July 15 amounted to $1,013.61. Finally, to induce Martin to go through with the transaction, the McCords agreed to stand $446.79 of the accrued interest. That was done by reducing the amount of the third deed of trust which Martin was to execute, and on those terms the exchange was finally made on August 23, 1955.

In its findings of fact, delivered orally at the conclusion of the testimony, the court found that the defendant acted as the agent of both parties, with their consent; that as plaintiffs' agent defendant presented plaintiffs' original offer to the McCords; that before the McCords would sign the contract defendant deleted part of the adjustment clause on the back; that in making this alteration defendant acted as the agent of plaintiffs; and that as between plaintiffs and defendant, defendant did not have the authority to make the change, but that he did have the authority to bind plaintiffs to the McCords. The court further found that defendant had earned the commission of $500 plaintiffs had paid defendant, and denied recovery of that amount, but it held that because defendant had violated his authorization plaintiffs had been compelled to pay out $566.82 on the accrued interest. Accordingly, the court entered a judgment in favor of plaintiffs and against defendant for that amount. Plaintiffs did not appeal, and we are not asked to rule upon that part of the judgment concerning the commission.

Defendant contends on appeal that the court erred in rendering judgment in favor of plaintiffs; first, because defendant was acting as the agent of the McCords, not of the plaintiffs, when defendant made the alterations, including that on the back of the form; secondly, because the McCords directed the deletion, knew that it had

not been authorized by plaintiffs, and must be held to have known that plaintiffs were not bound by the change; and thirdly, because after plaintiffs learned of the defendant's alteration of the contract, plaintiffs ratified it by obtaining a further concession from the McCords and closing the deal.

■■ We agree with the first two propositions advanced by defendant. As a general rule, a real estate broker is a special agent for a single object, and he cannot bind his principal beyond the limits of the authority conferred upon him. Politte v. Wall, Mo.App., 256 S.W.2d 283. There is no evidence in the record from which it may be concluded that defendant was given any authority, express or implied, to negotiate a contract with the McCords on behalf of plaintiffs. Compton v. Vaughan, Mo., 222 S.W.2d 81. Both plaintiffs and defendant agree that the defendant was merely the scrivener of the proposed contract as first drawn, and that Martin dictated its terms. Defendant's authority was limited to the presentation of plaintiffs' written proposal to the McCords. When the McCords rejected plaintiffs' offer, defendant's services to and representation of the plaintiffs ceased, or were suspended, at least temporarily.

The undisputed evidence is that the McCords made a counter-offer, which was itself, of course, a rejection of plaintiffs' original offer. In interlining and modifying the terms of the written instrument to incorporate the McCord's counter-proposal, at their direction, the defendant was acting as the McCord's agent, not the plaintiffs. It follows that defendant's action in altering the written instrument did not bind plaintiff to the McCords.

■ However, the court's general conclusion that the defendant breached his duty to the plaintiffs is amply supported by the evidence. Despite the biblical injunction that, "No man can serve two masters," Matthew V, 24, defendant undertook to represent both the plaintiffs and the Mc-

Cords in this transaction, as he was permitted to do, with their consent. Windsor v. International Life Insurance Co., 325 Mo. 772, 29 S.W.2d 1112; Craig v. Rhodes, Mo., 298 S.W. 756. But the relationship of a broker to his customer is fiduciary and confidential in character, and his obligations are as exacting as those imposed on a trustee in favor of his beneficiary. King v. Pruitt, 365 Mo. 823, 288 S.W.2d 923; Dittmeier v. Missouri Real Estate Commission, Mo.App., 237 S.W.2d 201. A broker so unwise as to place himself in the anomalous position of representing adverse parties must scrupulously observe and fulfill his duties to both. And, among other duties which a broker owes to his principal is that of keeping his customer fully informed of all facts pertinent to the transaction. Acy v. Inland Security Co., Mo. App., 287 S.W.2d 347; Politte v. Wall, Mo. App., 256 S.W.2d 283.

■ Hence, though defendant may have been acting as the agent of the McCords when he altered the terms of the proposed contract, he was acting at least in a dual capacity when he conferred with Martin on June 20. And there can be no doubt that his duty to the plaintiffs required him to inform plaintiffs of all of the terms of the McCord's counter-offer, including that part relating to the non-adjustment of the interest. While the evidence as to that issue is conflicting, after fully considering all of the evidence, the only conclusion which may be drawn is that the defendant did not inform Martin on June 20, nor until July 28, of the alteration defendant had made in the adjustment clause. In so failing defendant breached his duty to the plaintiffs. Politte v. Wall, supra; Garner v. Woods, Mo.App., 24 S.W.2d 708.

■ Defendant's final point is that even though it be assumed that defendant exceeded his authority as plaintiffs' agent by altering the contract, plaintiffs with knowledge of that fact, closed the deal, and thereby ratified defendant's act. The weakness in this argument is two-fold. As we

have pointed out, defendant was acting on behalf of the McCords, not as plaintiffs' agent, when he made the alteration. And, of even greater importance, the evidence of both parties clearly shows that when plaintiffs first learned of the deletion in the adjustment clause plaintiffs repudiated the contract, and refused to close the transaction on the terms set forth therein. When defendant refused to return the earnest money plaintiffs then negotiated directly with the McCords, who finally, to induce plaintiff to make the exchange, agreed to stand $446.79 of the accrued interest of $1,021.57. Thus, plaintiff did not ratify the written agreement as it existed on July 28; and the deal was not closed on those terms. What plaintiff did, in effect, was to make a new contract, containing a material change from the one plaintiff repudiated. And, it was on the basis of the new agreement that the transaction was closed.

It may be contended that since plaintiffs negotiated a new contract whereby they agreed to assume part of the accrued interest, in the amount of $566.82, they did so voluntarily, and their loss of that sum was not attributable to defendant's breach of duty. But regard must be had to the circumstances in which plaintiffs found themselves on July 28, when they first learned the contract had been altered. With the knowledge and consent of defendant and the McCords, plaintiffs had taken possession of the Hi Ho property, on July 15, had installed their son as manager, and were operating it as a resort. They had expended at least $2,000 for a jeep, boats and motors to be used in that operation. They sought but were refused the return of their earnest money. Faced with this situation, in which they had been placed by defendant's breach of duty, plaintiffs made the best deal they could with the McCords, in an effort to mitigate their loss. For that reason the assumption by plaintiffs of $566.-82 of the accrued interest is a natural and probable consequence of defendant's dereliction of his duty. Plaintiffs' only other alternative would have been to have stood on their repudiation, closed the resort, salvaged what they might have from the sale of their equipment, and then have sued the defendant for whatever loss thereby resulted. There is no evidence in the record as to what the result would have been. If a lesser damage might have been achieved by plaintiffs by that avenue of mitigation the burden was on the defendant to prove it. Cline v. City of St. Joseph, Mo.App., 245 S.W.2d 695.

For the reasons stated, the Commissioner recommends that the judgment be affirmed.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court.

Accordingly, judgment is affirmed.

WOLFE, P. J., and ANDERSON and RUDDY, JJ., concur.