**Leta M. LEUZINGER, Appellant,**

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., a corporation, Defendant,**

**and**

**North Kansas City State Bank, Respondent.**

**Leta M. LEUZINGER, Appellant,**

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., a corporation, Respondent,**

**and**

**North Kansas City State Bank, Defendant.**

**Nos. 51034, 51168.**

Supreme Court of Missouri,

En Banc.

Nov. 8, 1965.

Motion to Modify or for Rehearing Denied Dec. 13, 1965.

Robert B. Langworthy, John R. Cleary, Kansas City, for appellant, Linde, Thomson, VanDyke, Fairchild & Langworthy, Kansas City, of counsel.

Darrell L. Havener, Robert C. Canfield, Kansas City, for respondent. Merrill Lynch, Pierce, Fenner & Smith, Inc., Watson, Ess, Marshall & Enggas, Kansas City, of counsel.

Wm. Coleman Branton, Kent E. Whittaker, Kansas City, for respondent, North Kansas City State Bank, Brewer, Myers & Branton, Kansas City, of counsel.

HOUSER, Commissioner.

Action by Leta M. Leuzinger against a brokerage firm (hereinafter "Merrill Lynch") and a bank to recover $29,562.82 for breach of defendants' obligations as brokers and bankers. Merrill Lynch filed a motion for summary judgment, which was sustained as to that defendant. The bank filed a motion to dismiss, which was sustained as to the bank. Separate appeals were taken to this court by plaintiff. The two appeals were consolidated for hearing, and will be decided in one opinion.

These are the conceded, undisputed facts: Plaintiff is the wife of W. C. Leuzinger. Early in July, 1959 plaintiff made a telephone call to an account executive of Merrill Lynch. After identifying herself plaintiff stated that another employee of Merrill Lynch had previously conferred with her and her husband, and that she wanted to open a securities account with the brokerage firm. Asked what type of account, plaintiff said that she wanted to open an account where securities can be purchased, paid for in cash, sold, and the proceeds credited to the account. Plaintiff instructed the account executive to put the account in the name of her and her husband as joint tenants. The executive mailed to plaintiff's home address the firm's regular and customary "Joint Account with Right of Survivorship Cash Transactions" form, to be signed by both plaintiff and her husband, dated, and returned so that the account could be opened. Several days later the new account card, bearing the signatures of W. C. Leuzinger and Leta M. Leuzinger, dated July 9, 1959, was returned to the of-

fice of Merrill Lynch. It is reproduced as follows:

## "JOINT ACCOUNT WITH RIGHT OF SURVIVORSHIP

CASH TRANSACTIONS
JUL 16 1959          Stencil Here
NA-4 (—MR. WALTER C. LEUZIN-
    GER
    MRS. LETA M. LEUZINGER
    BOX 403–Y, ROUTE #6
    PARKVILLE MISSOURI
    (—653–16974          1741
"TO: MERRILL LYNCH, PIERCE, FENNER & SMITH INCORPORATED

"Dear Sirs:

"With respect to our joint account with right of survivorship we confirm that:

"1. In all matters pertaining to the account you may act upon orders and instructions from either of us.

"2. Upon the death of either of us, all securities, funds and property in the account shall be the sole property of the survivor.

"3. The foregoing shall also extend to your successors, by merger, consolidation or otherwise, and assigns.

(Signed) W. C. Leuzinger
(Signed) Leta M. Leuzinger

"Date July 9, 1959"

Plaintiff instructed the executive by telephone to purchase certain securities for the joint account, which instructions were carried out. In that transaction Mr. Leuzinger gave no instructions or directions. From July 8, 1959 through December 10, 1962 Merrill Lynch handled approximately one hundred transactions for the joint account. With the exception of two transactions which took place shortly after the account was opened, in which plaintiff gave the instructions, all of these transactions were undertaken pursuant to instructions from W. C. Leuzinger. On December 10, 1962 Merrill Lynch held certain securities, the property of W. C. Leuzinger and plaintiff,

in said account. On that day, without any written or unwritten request or authorization by plaintiff, but upon request of W. C. Leuzinger, Merrill Lynch sold all of the securities in the joint account, reduced the same to cash, and received and held for the account of W. C. Leuzinger and plaintiff the sum of $59,125.65. On and prior to December 10, 1962 a checking account, standing in the joint names of plaintiff and W. C. Leuzinger, was maintained at the defendant bank. On request by W. C. Leuzinger Merrill Lynch disbursed the entire proceeds of the joint brokerage account by its check for $59,125.65 made payable to "North Kansas City State Bank for account of W. C. Leuzinger and Leta M. Leuzinger" and delivered the check to W. C. Leuzinger, without the written or unwritten authority or consent of plaintiff. W. C. Leuzinger presented the check to the bank and requested that it be deposited in the joint checking account. The bank accepted the check for deposit to the joint checking account, the bank endorsing the check as follows:

" 'Credited to the account of
THE WITHIN NAMED PAYEE
Absence of endorsement guaranteed
KANSAS CITY STATE BANK
North Kansas City, Missouri' "

Upon the crediting of the proceeds of the check to the joint checking account W. C. Leuzinger, without the written or unwritten authorization or consent of plaintiff, immediately thereafter withdrew from the account the entire proceeds of the check in the sum of $59,125.65, and appropriated the same to his own use.

Plaintiff's petition admitted that the brokerage account was maintained in the names of W. C. Leuzinger and Leta M. Leuzinger "as joint tenants with rights of survivorship, and not as tenants in common." The theory of the petition as against Merrill Lynch was that the brokerage firm breached and violated the terms of its agreement with plaintiff by disbursing funds out of the joint brokerage account by check which

was not specifically drawn so as to require the personal endorsement of plaintiff and by delivering the check to W. C. Leuzinger without the consent or approval of plaintiff. Plaintiff pleaded that the written agreement required Merrill Lynch to draw checks so as to require her personal endorsement, and to deliver any such check jointly to plaintiff and W. C. Leuzinger, or upon the joint order of both of them, and that by delivering the check to W. C. Leuzinger as it did, with knowledge that plaintiff had a joint interest in the proceeds, Merrill Lynch made it possible for W. C. Leuzinger to divert the entire amount of the proceeds to his own use, and deprive plaintiff of her interest therein, and thus Merrill Lynch "in legal effect converted to its own use the said $59,125.65."

Plaintiff's petition pleaded as against the bank that the bank breached its obligations to plaintiff and acted without authority in depositing the proceeds of the check to the joint checking account without the personal endorsement of plaintiff thereon, and in thereafter paying the net proceeds of the check to W. C. Leuzinger without the written consent or authorization of plaintiff. Plaintiff charged the bank with conversion by negotiating and transferring to W. C. Leuzinger the proceeds of the check as it did, without plaintiff's endorsement and approval, by "wrongfully" enabling W. C. Leuzinger to divert the entire amount of the proceeds of the check to his own use and deprive plaintiff of her interest therein.

Defendants' answers admitted the facts pleaded, but denied the legal consequences plaintiff attributed to them.

*On the appeal from summary judgment for Merrill Lynch:*

Plaintiff's sole point: Error in sustaining the motion for summary judgment; that the pleadings and affidavits on file did not sustain Merrill Lynch's burden of showing that it was entitled to summary judgment as a matter of law; that on the contrary they clearly establish that Merrill Lynch was *not* entitled to judgment.

Plaintiff's argument runs in this wise: The securities and the proceeds resulting from their sale were held by the Leuzingers "as joint tenants or tenants by the entirety." Each had an interest in the whole, a fact which was known to Merrill Lynch. While Merrill Lynch had the right to act upon the order of plaintiff's husband to sell the securities, the agreement authorizing Merrill Lynch to act upon orders and instructions from either husband or wife did not entitle Merrill Lynch to distribute jointly owned proceeds as it did, without plaintiff's knowledge, acquiescence and consent. When Merrill Lynch received the proceeds of the sale of the securities it held them in a fiduciary capacity, and owed to plaintiff the duty, as a trustee of the proceeds, to keep plaintiff fully informed of all facts pertinent to the transaction. Since the account was maintained in the joint names of plaintiff and her husband "it would have been consistent and correct" for Merrill Lynch to issue its check payable to plaintiff and her husband. Instead, Merrill Lynch made the check for the whole of the proceeds of the sale payable to the bank in a manner which "it knew, or must be said to have known, could result in the deprivation of plaintiff's property"; that thus and thereby Merrill Lynch "breached its agreement"; "exercised unauthorized acts" of dominion over the funds and "wrongfully misappropriated" or "caused and allowed another to misappropriate the proceeds," and consequently Merrill Lynch is liable to plaintiff for breach of its fiduciary duty.

In support of her thesis plaintiff cites 12 C.J.S. Brokers § 27 and Martin v. Hieken, Mo.App., 340 S.W.2d 161, for the general rule that the relationship of broker to his customer is fiduciary and confidential in character; that the broker's obligations are as exacting as those imposed upon a trustee, and include the duty of keeping the customer fully informed of all facts

pertinent to the transaction; Feltz v. Pavlik, Mo.App., 257 S.W.2d 214, for the proposition that one joint tenant cannot deprive the other of his interest in jointly owned property by his appropriation of it; Johnston v. McCluney, Mo.App., 80 S.W.2d 898, for the rule that a trust arises where a broker sells his customer's bonds without the latter's knowledge or consent and appropriates and disposes of the proceeds for his own purposes, 12 C.J.S. Brokers § 28 for the general rule that a broker is liable as for a conversion where he wrongfully misappropriates, sells or otherwise exercises unauthorized acts of dominion or ownership over a customer's funds. We recognize the general rules stated in these authorities, but they are of little assistance. None of the cases cited by plaintiff arises out of facts similar to the situation now before the Court. No authority is cited by plaintiff on the question for decision, viz., whether a broker is liable to one joint tenant of a joint brokerage account as for a breach of trust, misappropriation or conversion of joint funds where, without the knowledge, acquiescence or consent of that joint tenant, but at the direction of the other joint tenant, with whom the broker has had a long-continued course of dealing under a written agreement authorizing the broker to act upon instructions from either joint tenant, the broker issues a check to clear the joint account, making it payable to a designated bank *for the account of both joint tenants*, and after the check is deposited in the designated bank the joint tenant who gave the directions to the broker wrongfully converts the whole of the bank account to his own uses and purposes to the exclusion of the other joint tenant.

The brokerage firm is not liable, for three reasons:

■ (1) Merrill Lynch had broad general authority to act upon the instructions of W. C. Leuzinger alone; authority which was sufficiently inclusive to cover the disbursement of the fund of the joint account. Plaintiff signed a writing, Exhibit A, in which in plain, simple, unequivocal language she confirmed that Merrill Lynch could act upon orders and instructions from either W. C. Leuzinger or Leta M. Leuzinger in *all matters* pertaining to the account. "All matters" is an all-inclusive term, embracing the termination of the account and including directions as to the method, mode and manner in which the final disbursement of funds should be accomplished in closing out the account. The grant of authority contained no limitations, exceptions or provisos. In particular, it did not require disbursements from the account to be made by check payable to W. C. Leuzinger and Leta M. Leuzinger, or to the order of both, or in such manner as to require Leta M. Leuzinger's personal endorsement, as plaintiff contends. Neither the petition nor any exhibit attached to the petition indicates that Merrill Lynch was obligated to obtain the approval and consent of, or to inform, one joint tenant before following the orders and instructions of the other. Plaintiff's rights are governed by the writing which she signed, and she may not now complain that Merrill Lynch did that which she authorized that firm to do. Esmar v. Haeussler, 234 Mo.App. 217, 115 S.W.2d 54, 62.

■ Pursuant to the general duty of a stockbroker to act in good faith with customers and to make a complete and full disclosure of all material facts concerning a transaction, if the stockbroker knows of facts and circumstances which would lead an ordinarily careful and diligent person to believe that one joint tenant of a joint brokerage account was in the process of wrongfully converting to his own uses and purposes the interest of the other joint tenant, a duty to inform the latter would arise, and in such case the broker would be derelict in disbursing the whole account to the joint tenant under suspicion, without first informing the other and obtaining consent and approval to the disbursement. This leads us into the other reasons why Merrill Lynch is not liable.

(2) The manner in which Merrill Lynch executed W. C. Leuzinger's instructions was not inconsistent with plaintiff's interest in the joint account, and

(3) there is nothing in the admitted facts to indicate that W. C. Leuzinger did or said anything which under the circumstances would have aroused the suspicions of an ordinarily careful and diligent stockbroker.

■ The check issued by Merrill Lynch was made payable to "North Kansas City State Bank for account of W. C. Leuzinger and Leta M. Leuzinger." Plaintiff concedes that "The proceeds check was made payable to the Bank for the benefit of appellant and her husband," and that the check showed on its face that the proceeds of the check constituted *jointly owned property* in which plaintiff had an interest. Plaintiff was specifically named in the check. Her interest in the proceeds of the check was clearly recognized and sufficiently defined and preserved. Considering the form in which the check was ordered to be made payable it was reasonable for Merrill Lynch to conclude that the joint funds were being withdrawn from one joint account for transfer by this device to another joint account. In truth and fact that is exactly what happened. For all intents and purposes, from the viewpoint of any reasonably careful and diligent stockbroker, the withdrawal from the Merrill Lynch account appeared to be wholly consistent with the wishes, purposes and intention of both owners of the joint account.

Nothing indicates that the Leuzingers were having any marital difficulties, or that Merrill Lynch was apprised of any lack of harmony as between the joint tenants. W. C. Leuzinger and Merrill Lynch had engaged in 98 transactions over a period of 3½ years in all of which W. C. Leuzinger acted alone and not in concert with his wife, and there is nothing to indicate that during this considerable course of dealing plaintiff had taken any exception whatever to the manner in which her husband was transacting the joint business. There is no showing that Merrill Lynch had actual or constructive notice of any fact or circumstance which would have put a reasonably careful and diligent fiduciary on notice or suspicion that W. C. Leuzinger's instructions with respect to the check were part of a plan or scheme on his part to sever the funds from the joint estate or that his *modus operandi* was calculated to wrongfully deprive plaintiff of her interest in the funds. The fact that W. C. Leuzinger was withdrawing all of the funds, alone and of itself, would not be sufficient to raise a duty on Merrill Lynch to notify plaintiff. It is significant and we observe that plaintiff was deprived of her interest in the funds not by any wrongful act or misappropriation on the part of Merrill Lynch while the funds were under its control and it was accountable, but by the wrongful act of plaintiff's husband *after* the joint property had been disbursed by Merrill Lynch to W. C. Leuzinger, a person authorized to receive them—*after* the funds had been safely transferred to a bank account in which plaintiff had a joint interest.

*On the appeal from the bank's dismissal:*

Plaintiff's sole point: Error in sustaining the motion to dismiss the petition for failure to state facts upon which relief could be granted. Plaintiff argues that the facts stated in the petition impress on the bank a position of trust as to the proceeds of the check; that the bank received the check as trustee for both plaintiff and her husband, imposing upon the bank a duty "to insure" that plaintiff not be deprived of her interest in the jointly owned proceeds; that on its face the form of payment gave the bank actual notice that the funds constituted jointly owned property in which plaintiff had an interest; that with this notice the bank "negotiated the said proceeds check without obtaining" plaintiff's consent, or her endorsement, and without advising her of the fact that the check had been presented for payment. Therefore the bank acted without authority and in violation of

its duty to plaintiff in depositing the check in the joint account; it should have obtained plaintiff's authority to deposit the money. Plaintiff claims that it can be inferred from the manner in which the check was drawn that W. C. Leuzinger intended to deprive plaintiff of her joint interest; that by ordering the check made payable to the bank W. C. Leuzinger "was able to initiate and consummate his devious plot without her knowledge," and that the bank, by failing in its duty, allowed the scheme to be consummated. Furthermore, says plaintiff, the joint deposit statute, § 362.470, V.A.M.S., did not authorize the bank to permit W. C. Leuzinger to withdraw the funds from the joint account, under the facts of this case.

■ We have determined that the bank was within its lawful rights in accepting the deposit, endorsing the check and depositing it to the joint account, without securing the endorsement of plaintiff. The check was made payable to the bank, not to the bank and W. C. Leuzinger and Leta M. Leuzinger. The names of plaintiff and her husband appeared on the check not as payees, but apparently for the purpose of directing the payee bank as to the identity of the persons who owned the funds represented by the check and for whose account it was issued. It was not necessary for the bank to notify plaintiff that this check had been offered for deposit by her husband, or that the bank had deposited it and credited it to their joint account. There was nothing in the form of the check or in the fact that it was presented for deposit, or otherwise, that would charge the bank with notice of W. C. Leuzinger's intention to wrongfully appropriate the proceeds of the sale of the securities in the brokerage account, or that he was "initiating or consummating" a "devious plot." When the check was offered to the bank for deposit the bank was bound to presume, in the absence of notice to the contrary, that the check had been issued, and that it was being deposited, in good faith and for proper purposes. To charge the bank with the

duty of making inquiry concerning the background and *bona fides* of every transaction out of which checks offered for deposit arise, or to stop and notify the other joint depositor when one of them makes a deposit in a joint account, would seriously interfere with commercial transactions. The form in which the bank was named payee did not constitute the bank a trustee for the Leuzingers, nor did the bank assume the duties of a trustee when it accepted the deposit. In effect, although not in terms, plaintiff contends that this was a special deposit, whereby the bank assumed the position of a bailee or trustee in reference to the deposit. This, however, was not a special deposit, for it is not pleaded that there was any agreement, express or implied, between W. C. Leuzinger and the bank, or direction to the bank, that the deposit not be commingled with the assets of the bank and used as its own but be kept intact, distinct and apart from the funds of the bank as a separate deposit for a specific purpose. Not having been made with any such conditions or limitations attached, the deposit was a general deposit, notwithstanding the bank may have known of the source or character of the money deposited. Hershey v. Northern Trust Co., 342 Mo. 90, 112 S.W.2d 545, [5]. In the case of a general deposit the relationship between the bank and the depositor is that of debtor and creditor, and not trustee and cestui que trust. Butcher v. Butler, 134 Mo.App. 61, 114 S.W. 564; 10 Am.Jur.2d Banks § 339.

No claim upon which relief could be granted is stated against the bank for wrongfully accepting the deposit of the check.

Finally, does the petition state a claim against the bank for allowing one joint depositor to withdraw the funds deposited, without the authority of the other joint depositor?

■ The bank defends its action solely on the basis of the joint deposit statute, § 362.470, V.A.M.S., which provides in effect that when a deposit is made in the name of

the depositor and another person and in form to be paid to either, or the survivor of them, such deposit and any additions thereto made by either of such persons, shall become the property of such persons as joint tenants and may be paid to either during the lifetime of both, or to the survivor of them after the death of one of them. A deposit made within the purview of § 362.470 is presumptively the property of the depositors as joint tenants, subject to withdrawal by either without the consent of the other.

■ Whether § 362.470 is applicable depends upon the form, manner and circumstances under which the joint bank account was established and maintained. The petition does not plead or attach as an exhibit any written or printed form of depositors' agreement. All we know from the pleading is that the checking account "stood in the joint names of plaintiff and W. C. Leuzinger." There is nothing further to indicate the exact form or manner in which the bank account stood, except that it was a "joint checking account." From the pleading we conclude that the account stood on the bank records in the names of "W. C. Leuzinger and Leta M. Leuzinger." There is nothing in the petition or in any attached exhibit to indicate that the account was in form payable to either or the survivor of them, or that in setting up this account the parties complied with § 362.470. Where no compliance with § 362.470 is shown there is no presumption of joint tenancy. Jenkins v. Meyer, Mo.Sup., 380 S.W.2d 315 [5]. The form of the account, "W. C. Leuzinger and Leta M. Leuzinger," does not indicate an intention to create a joint tenancy. Longacre v. Knowles, Mo.Sup., 333 S.W.2d 67, 71 [7].

■ The bank takes the position that plaintiff having alleged and argued that she and her husband maintained a *joint account* in the bank thereby admitted that this was a joint tenancy. This does not follow. "The expression 'joint account' is, by long continued common usage, a rather

general and often erroneous term. It is often and indiscriminately applied to accounts which are held as tenants in common, as tenants by entirety, as joint tenants with right of survivorship, and to accounts which simply carry authority to check." Harrellson v. Barks, Mo.App., 326 S.W.2d 351, 360. A joint bank account may or may not be a joint tenancy, depending upon the intention of the parties. For instance, regardless of the form of a deposit, a joint tenancy is not created where the account is made joint purely for convenience and without intent to create any property interests. 48 C.J.S Joint Tenancy § 3, p. 920. Plaintiff is not to be foreclosed simply because she alleged that this was a "joint account."

■ Eliminating from consideration the joint deposit statute, § 362.470, we recognize the rule lately announced in Clabbey v. First National Bank, Mo.App., 320 S.W.2d 738 [3], that the rights and duties as between a bank and those in whose names a joint credit deposit is made is ordinarily governed by contract, express or implied; and that where several persons make a deposit to their joint credit the bank must have the signatures of all of them appended to a check against the fund, or take the risk of payment. 320 S.W.2d l. c. 741 [4]; 9 C.J.S. Banks and Banking § 334; 10 Am. Jur.2d Banks § 550. "Permitting withdrawal from a joint account without authority from all the joint depositors may render the bank liable to a depositor not authorizing the withdrawal." 10 Am.Jur.2d Banks § 500.

■ Proceeding from these general considerations to the particular situation of a joint deposit in the names of a husband *and* wife, we are of the opinion that in the absence of a governing statute, an agency of one spouse for the other, or some other contractual arrangement that money so deposited may be paid to either or only one of them, the funds may not be withdrawn except on checks or orders signed by *both* husband and wife; that the bank cannot, without special authority, pay money out

of such a bank account on checks signed by one spouse alone. This for the reason that a deposit in the joint names of a husband and wife is presumed to be a tenancy by the entirety. McIntyre v. McIntyre, Mo. Sup., 377 S.W.2d 421 [7]; In re Baker's Estate, Mo.App., 359 S.W.2d 238; State Bank of Poplar Bluff v. Coleman, 241 Mo. App. 600, 240 S.W.2d 188; Craig v. Bradley, 153 Mo.App. 586, 134 S.W. 1081, 1082. See also Madden v. Gosztonyi Savings & Trust Co., 331 Pa. 476, 200 A. 624, 117 A.L.R. 904 [12]. The same incidents which are affixed to a tenancy by the entirety in other property attach to such a deposit. Craig v. Bradley, supra. One of the incidents of a tenancy by the entirety is that any act affecting the title to property thus held must be by joint act. Badger Lumber & Coal Co. v. Pugsley, 227 Mo.App. 1203, 61 S.W.2d 425. The husband, acting alone, may not bind the wife by a sole contract, Austin & Bass Builders, Inc. v. Lewis, Mo. Sup., 359 S.W.2d 711, or in the case of real estate thus held, he may not subject the property to a mechanic's lien. Wilson v. Fower, 236 Mo.App. 532, 155 S.W.2d 502, because the estate is not held by moieties or halves, but both tenants hold and own the entire estate as a single person. A. J. Meyer & Co. v. Schulte, Mo.App., 189 S.W.2d 183 [4]. The money on deposit in a joint deposit of husband and wife does not belong to the husband, nor is it half the husband's and half the wife's or part his and part hers. The deposit, made in their joint names, and not to them or either of them, belongs to them "undividedly," and in the absence of an agreement that the money can be paid to either or only one of them it cannot be withdrawn except upon checks or orders signed by both of them, "and the bank could pay differently only at its peril. To hold otherwise would put it in the power of either to destroy the estate by entireties by withdrawing the fund and applying it to his or her own use, without the joinder or acquiescence of the other spouse; which is directly opposed to the nature and character of a true estate by entireties, like this one." Milano v. Fayette Title & Trust Co., 96 Pa.

Super. 310, 314. See also Gish Banking Co. v. Leachman's Adm'r, 163 Ky. 720, 174 S.W. 492, L.R.A.1915D, 920.

Plaintiff did not plead any agency or other contractual arrangement authorizing the bank to pay on the check of either or only one of them. On the contrary, plaintiff pleaded that the bank "acted without authority and in violation of its obligations to plaintiff in * * * paying to the said W. C. Leuzinger the net proceeds of said check without the written consent or authorization of plaintiff."

█ As the case now stands on plaintiff's pleading, plaintiff has stated a claim upon which relief can be granted against the bank, and it was error to sustain the motion to dismiss as to the bank.

Accordingly, the judgment in case No. 51168 is affirmed, and the judgment in case No. 51034 is reversed and the cause remanded for further proceedings against the bank.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

HYDE, HENLEY, FINCH, EAGER, and DONNELLY, JJ., concur.

HOLMAN, J., dissents in separate dissenting opinion filed; STORCKMAN, C. J., dissents and concurs in separate dissenting opinion of HOLMAN, J.

HOLMAN, Judge (dissenting).

I respectfully dissent from the opinion of Judge HOUSER. In regard to Merrill Lynch, it is my view that the agreement authorized it to act upon the orders of either of the joint tenants in regard to the purchase and sale of securities and related matters. However, in the absence of specific authorization otherwise (which did not exist in this case), I think any disbursement of funds due the joint tenants was re-

quired to be made to both of them and could not be paid to either of the joint tenants or to a third party for their benefit.

In regard to the Bank, it is my view that the money paid to it "for account of W. C. Leuzinger and Leta M. Leuzinger" was a special trust fund and the bank had no authority to deposit it in any existing account that the Leuzingers may have had in that bank without the consent and authorization of both of them. Without such authorization, the bank could only hold the funds until paid to both of said beneficiaries.

I would reverse and remand as to both defendants for a trial on the merits.