STATE BANK OF POPLAR BLUFF, A CORPORATION, AND BEATRICE M. COLEMAN, RESPONDENT, v. FRANK B. COLEMAN, DECEASED, APPELLANT.—240 SW (2) 188.

Springfield Court of Appeals. May 21, 1951.

*George S. Roudebush* and *Phillips & Phillips* for Appellant.

602

604

606

*Robert C. Hyde* for respondent, Beatrice M. Coleman.

VANDEVENTER, P. J.—This case was started by a bill of interpleader. Answers were filed by Mrs. Beatrice Coleman, widow, and Frank B. Coleman, Executor of the estate, of Charles B. Coleman, deceased. Upon trial, the court rendered judgment for Mrs. Coleman. From that judgment, Frank B. Coleman, Executor, has appealed.

In its bill of interpleader, the State Bank of Poplar Bluff stated that it had in a checking account in the name of "C. B. Coleman and Mrs. Charles B." the sum of $6,887.86; that C. B. Coleman died February 1, 1949; that this sum was claimed by the widow of the deceased C. B. Coleman and also by the Executor of his estate. Plaintiff asked permission to pay the sum into court and prayed the court to have these parties interplead. This order was made and Frank

B. Coleman, Executor, filed his answer, claiming the sum on the theory that it belonged to the estate of the deceased. Mrs. Coleman in her answer and cross bill claimed that the funds were held as an estate by the entirety and that upon her husband's death, it became hers and she prayed judgment accordingly.

By stipulation and testimony, it was shown that in 1928, C. B. Coleman, who was a practicing dentist, had an account in plaintiff's bank in his own name. That on June 20th, 1934, he married Beatrice McDaniel and that shortly thereafter, the account was changed to the name of C. B. Coleman and Mrs. Charles B. Coleman. They were husband and wife from the marriage until C. B. Coleman's death. From the time the account was changed until his death, both of them drew checks against the account and these checks were honored without any remonstrance from either of them or from the bank. Apparently, Beatrice kept no record of her checks and neither Dr. Coleman nor his secretary, witness Schmerbauch, knew the number of checks she drew during the month until the monthly statement arrived. On occasions, apparently the account would be overdrawn. This account contained a balance of $6,887.86 at Dr. Coleman's death.

The evidence also showed that Dr. Coleman had a separate account in his individual name in the Bank of Poplar Bluff in which his wife had no interest and that Beatrice M. Coleman had a separate account in her name in plaintiff bank, in which her husband had no interest. Ledger sheets were introduced in evidence which were headed "Mr. and Mrs. C. B. Coleman, 105 No. Main Street, Poplar Bluff, Missouri." One signature card filed with the bank May 6, 1942, was signed by both Dr. and Mrs. Coleman and it authorized the bank to recognize these signatures "in payment of funds or the transaction of other business on our account." On the bottom of this signature card was the notation put there by employees of the bank in typewriting, "Coleman, C. B. and Mrs. Charles B." A charge was made of three cents for each check written on the account above eight in number and an itemized slip stating the amount of this charge was included with the monthly bank statement. On the bottom of this slip was this notation made by the bank, "Charge account of Mr. and Mrs. C. B. Coleman." Two of these slips were introduced in evidence. There was testimony relative to other ledger sheets (which were not introduced) which showed they were headed "C. B. Coleman", "C. B. Coleman or Mrs. C. B. Coleman" and others "C. B. Coleman and Mrs. C. B. Coleman." This variation was attributed by officers of the bank to the fact that during the war some of their regular employees were inducted into the armed service and they were forced to employ incompetent and inexperienced persons.

The evidence tended further to show that most, if not all of the deposits were made by Dr. Coleman.

The President of plaintiff bank testified that the entry at the top of the ledger sheet should have been originally made from the deposit ticket. He remembered a conversation with deceased to the effect that because Beatrice Coleman had a personal account in her name, as "Beatrice McDaniel Coleman" that on the account with her husband, they should use the designation Mrs. C. B. or Mrs. Charles B. Coleman to avoid confusion in the accounts. The account had been carried as a "joint" account for about fifteen years. Beatrice M. Coleman was placed upon the witness stand but the court refused to permit her to testify because of the provision of Sec. 1887 R. S. Mo. 1939 (the dead man statute.)

It is well settled that there can be an estate by the entirety in a bank account. Ambruster v. Ambruster 31 S. W. (2) 28, 326 Mo. 51, 77 A. L. R. 782. Cullum v. Rice, 236 Mo. App. 1113, 162 S. W. (2) 342. Ryan v. Ford, 151 Mo. App. 689, 132 S. W. 610. Rezabek v. Rezabek, 196 Mo. App. 673, 192 S. W. 107.

And that is so whether the husband or the wife, or both, furnish the money that goes into the account. Murphy v. Wolfe 329 Mo. 545 (en banc) 45 S. W. (2) 1079. Sutorius v. Mayor, 350 Mo. 1235, 170 S. W. (2) 387. Cisel v. Cisel, 352 Mo. 1097, 180 S. W. (2) 748. Bender v. Bender, 281 Mo. 473, 220 S. W. 929. Kaufmann v. Kaufmann 70 A. (2) 481, 166 Pa. Super. 6.

The common law relative to estates by the entirety governs in Missouri. Schwind v. O'Halloran, 142 S. W. (2) 55, 346 Mo. 486. Linders v. Linders, 356 Mo. 852, 204 S. W. (2) 229. McElroy v. Lynch (Mo.) 232 S. W. (2) 507. Frost v. Frost, 200 Mo. 474, 98 S. W. 527, 118 Am. Jur. S. R. 689.

And the statute relative to joint deposits or other similar statutes does not affect common law estates by the entirety where property is in the name of a husband and his wife. The presumption is that it is an estate by the entirety. Cullum v. Rice, 236 Mo. App. 113, 162 S. W. (2) 342.

It makes no difference if they are not so designated, if in fact, they are husband and wife.

We think that under the decisions of this state, the evidence in this case was sufficient to show an estate by the entirety. Craig v. Bradley 134 S. W. 1081, 153 Mo. App. 586. Murphy v. Wolfe 329 Mo. 545, 45 S. W. (2) 1079. Simon v. St. Louis Union Trust Co. 346 Mo. 146, 139 S. W. (2) 1002. Baker v. Lamar (Mo.) 140 S. W. (2) 31. Hiatt v. Hiatt (Mo.) 168 S. W. (2) 1087. Davidson v. Eubanks, 354 Mo. 301, 189 S. W. (2 295, 161 A. L. R. 450. Black v. Black 199 Ark. 609, 135 S. W. (2) 837. Dickson et al. v. Jonesboro Trust Co. 154 Ark. 155, 242 S. W. 57. Pattons Digest of Legal (Banking) Opinions, Vol. II (1942 Ed.) Page 1708, Sec. 14D :15.

The deceased had an account in his own name prior to the marriage. Immediately after his marriage it was changed to himself and his

wife and he discussed with the banker the proposition of using the name, Mrs. Charles B. Coleman, because she had a personal account in the name of Beatrice McDaniel Coleman in the same bank. He had a separate account in his name in another bank in which she had no interest and in the plaintiff bank she had a separate account in which he had no interest. She had drawn checks on this joint account for 15 years. From it, household, office and personal expenses were paid. A great portion, if not most of the ledger sheets were in their joint names. When a service charge was made against the account, it was designated as a charge against the account of "Mr. and Mrs. C. B. Coleman." This slip notifying them of the service charge was included with the cancelled checks and monthly statement, which apparently was mailed to the deceased, himself, at his office. The signature card referred to it as "our account".

His secretary testified that she kept his books and that each month the monthly statements and checks were kept in Dr. Coleman's office and a check book was kept there. She testified that when the bank statements came back to the office, "We checked from our check books in the office the checks which were written for monthly bills." Upon being asked if she took the cancelled checks written by Mrs. Coleman and entered them in the check book, she said, "No, we just subtracted." the aggregate of them. This was from the balance which did not show the checks written by Mrs. Coleman. The secretary would make the deposits for Dr. Coleman. Sometimes he directed the deposit be made in his personal account at the Bank of Poplar Bluff and at other times in the account of himself and wife at the State Bank of Poplar Bluff. She was asked if she discussed the accounts with Dr. Coleman and she answered, "No, sir, we just checked them." She then stated that she checked them and the bank book would balance.

She then said that Dr. Coleman did not check the bank balances but left that to her.

There can be no question from this evidence but that immediately after the marriage, Dr. Coleman had his personal account in the State Bank of Poplar Bluff changed from his name alone to him and his wife. From that time on, each of them drew checks from it in payment of household, office and other expenses. There is no evidence whatever that this procedure was contrary to his intentions and there was no evidence of a complaint from him, his wife or the bank.

A subpoena had been issued for other signature cards but they were unable to find any since the one filed in 1942. From the banker's testimony as to the method of procedure, it is a reasonable inference that one was filed at the time the account was changed from Dr. Coleman's personal account to that of him and his wife, but it could not be found upon a search. The testimony shows Dr. Coleman was

an experienced business man, a director in the Poplar Bluff Trust Co., and familiar with banking matters.

It is not a reasonable inference from the testimony that the bank made the change in the account from Dr. Coleman, personally, to him and his wife without his authority, neither is it reasonable to assume that if they did so he would not have discovered or approved it in the fifteen years since the change.

Cases have been cited by appellant relating to gifts causa mortis and inter vivos. This was not such a gift and those cases do not apply. This was the creation of an estate by the entirety where, under the common law and the law of Missouri, there is unity of interest, time, title and possession in the husband *and* wife, each seized of the entirety, they being one person in law.

Neither does the fact that either Dr. Coleman or his wife could draw checks on the account destroy their relationship as tenants by entirety in the balance left in the bank. The drawing of the checks was by mutual consent. Kaufmann v. Kaufmann, 70 A. (2) 481, 166 Pa. Super. 6. Hoyle v. Hoyle (Del. Ch.) 66 A. 130, Madden v. Gosztonyi Savings and Trust Co., 200 A. 624, 331 Pa. 478, 117 A. L. R. 904.

The judgment of the trial court should be affirmed. It is so ordered. *Blair, J.* concurs.