**Wilmer E. McINTYRE, Respondent,**

**v.**

**Leona T. McINTYRE, Appellant.**

**No. 49863.**

Supreme Court of Missouri.

Division No. 2.

March 9, 1964.

Motion for Rehearing or to Transfer
to Court En Banc Denied
April 13, 1964.

Francis M. O'Brien, St. Louis, for appellant.

J. B. Mackler, St. Louis, for respondent.

STORCKMAN, Presiding Judge.

This is an equity suit for the construction and enforcement of a property settlement agreement made by the parties in contemplation of a divorce and for injunctive relief. The trial court decreed that the defendant be permanently enjoined from exercising control, spending, borrowing, transferring, or in any way using monies in her possession being held for the benefit of the plaintiff or their minor son Dale Alan McIntyre.[1] The decree further provided that the defendant should pay the sum of $21,031.64 into the registry of the court to be held for the use and benefit of Dale until he becomes 21 years of age and in the meantime no payments should be made from the fund except on court order, that the defendant turn over to plaintiff the sum of $18,000 with interest at six percent from the date of the contract, which sum with interest totaled $19,890, and that the plaintiff execute and deliver to the defendant a quit claim deed to

1. The middle name of the son is variously spelled in the contract and transcript and we have no way of telling which is correct, so we will simply refer to him as Dale.

certain described real estate located at 2853 Russell Avenue in accordance with the property settlement agreement. The defendant's motion for a new trial was overruled and she has appealed.

The property settlement agreement, dated October 6, 1960, stipulated that it should be performed on November 1, 1960, unless the parties mutually agreed to another date, and a copy of it was filed in the divorce action. The contract recited that the parties were husband and wife but were separated; that a divorce action filed by the wife against her husband was pending; that the parties mutually desired to make a permanent, complete, and final adjustment of all their property; that each of the parties was completely and fully informed as to the financial and personal status of the other, and each was represented by counsel. The contract has 24 numbered paragraphs and contains provisions for the custody and support of Dale, alimony, the disposition of household goods, the family automobile, and other real and personal property.

Sometime after the contract was executed, the parties were divorced. The defendant has remarried and her name is now Thompson. Nevertheless, since the parties in this case are switched from the way they appeared in the divorce action, for the sake of greater clarity, we will sometimes refer to the present defendant as Mrs. McIntyre and the plaintiff as Mr. McIntyre.

The property settlement contract was drafted by the attorney representing Mrs. McIntyre in the divorce action. In the present case she is represented by different counsel. The divorce attorney testified he typed the contract at home one night, apparently shortly before the divorce case was set; that while doing so he conferred with her by telephone to secure additional information, and that she read the contract and he explained it to her before she signed it. A substantial part of the financial means of the parties consisted of savings accounts on deposit with banks and savings and loan associations in St. Louis and Sparta, Illi-

nois. The accounts were in various names or combinations of the names of the parties; some of them included the name of the son Dale as a joint tenant, a survivor, or as a beneficiary of a trustee account. Apparently Mrs. McIntyre had possession of the passbooks but they were not available to her attorney when he drafted the settlement agreement. Consequently the division and disposition of the cash in the savings accounts was described for the most part by general terms in the contract and without regard to the number of the account, the depositary, the names of the depositors, or the correct amount on deposit.

In fact the record is far from satisfactory as far as the appellate court is concerned. While on the witness stand, Mrs. McIntyre produced a number of savings account books and testified with respect to these and other matters. The description of the accounts as stated into the record is fragmentary and incomplete. None of the books or other records were marked as exhibits or introduced in evidence although there was a suggestion at one point that this ought to be done. The situation was undoubtedly quite clear to the trial court and counsel with the books and records before them, but the review by this court is limited by the fact that the record before us does not give the complete picture. Neither party objected to this procedure; nevertheless, where a witness is permitted to give incomplete and fragmentary testimony as to the contents of records which are not introduced in evidence, it is impossible for an appellate court to obtain a clear understanding of the facts, and the practice should be discouraged. Paden v. Morris & Co., Mo.App., 251 S.W. 424, 426[2].

The only witness in addition to Mrs. McIntyre was the attorney who drafted the settlement agreement. He testified to the conditions under which the contract was drawn. In her supplemental answer and counterclaim, the defendant prayed that the contract "be set aside because of mutual mistake and misunderstanding" and further

that "the Court construe the contract * * and reform said contract in accordance with its construction or in the alternative to rescind said contract because of its ambiguity * * *." There is no evidence which justifies setting aside, reforming, or rescinding the contract, and the trial court did not err in refusing to grant the relief requested in the defendant's counterclaim.

▇▇ At one point in her brief, Mrs. McIntyre states that "the construction of the agreement and particularly Paragraphs Tenth and Twelfth were put in issue" in the trial court. At another point she states that paragraph Twenty-Third provides for the payment of $10.00 per month to her in lieu of alimony and that Mr. McIntyre claims this provision is void by reason of her remarriage. No issue was made by the pleadings or the evidence regarding alimony and the trial court did not adjudicate any such issue. On the record and briefs of the parties, no such issue is presented for review in this court.

In the settlement contract, the wife Leona T. McIntyre was referred to as the first party, and the husband Wilmer E. McIntyre was the second party. The paragraphs of the contract designated by the defendant as the subject matter of this controversy read as follows:

"Tenth: First party and second party mutually agree that any bank accounts, savings accounts or accounts or property of any kind whatsoever which is in the name of Dale Allen McIntyre at the time of the execution of this agreement shall remain for the sole account and use of the said Dale Allen McIntyre and neither party shall use any of said funds for his or her own personal use."

"Twelfth: Second party shall be solely entitled to the following amounts in the below listed accounts which are to be applied and added until second party receives the total sum of $22,500.00 (twenty-two thousand and five hundred dollars). If, upon an audit of the listed accounts, it is determined that the balance with accrued interest amounts to more than the sum stated below, that excess amount shall apply against the additional amount required of first party to make the sum total of $22,-500.00. The said accounts and estimated balances are as follows: [$2,000.00 Credit Union of Railway Express; 7,000.00 1st Federal Bank in Sparta, Ill.; 3,280.00 Jefferson Savings; 2,900.00 Farm & Home; 500.00 Stock; 2,000.00 Note; 1,813.00 Jefferson Savings.] First party agrees to execute any and all documents necessary in order to change the joint accounts above into accounts which are the sole property of second party and to pay to second party, any amount in cash representing the difference between the balance of all said accounts and $22,500.00."

On the evidence adduced the court made these findings of fact:

"1. That the parties hereto entered into a Stipulation on the 6th day of October, 1960, which Stipulation was prepared by Defendant and executed by both parties.

"2. That under the terms of said agreement all bank accounts, savings accounts or accounts or property of any kind whatsoever which were in the name of Dale Alan McIntyre at the date of the Stipulation aforesaid were to remain for the sole account of said Dale Alan McIntyre who is the son of the parties hereto.

"3. That said Stipulation further obligated the Defendant to pay to Plaintiff a certain sum of money or transfer of accounts so that he would receive the sum of $22,500.00.

"4. That Plaintiff further agreed to convey a certain parcel of real estate to Defendant.

"5. That from some time prior to the execution of the Stipulation and at all times thereafter the account books, records, and most of the assets were in the hands and under the control of the Defendant who made several changes in the accounts, clos-

ing some, opening others, and changing the designation of said accounts.

"6. The Court finds that the Defendant, in so changing said accounts, has taken unto herself funds that were in the name of Dale Alan McIntyre and has failed and refused to pay to Plaintiff such sum or sums due to Plaintiff under the terms of the Stipulation, contrary to the terms of said Stipulation."

With respect to funds for the benefit of Dale and the payment to be made to the plaintiff, the decree provides:

"It is further ordered, adjudged and decreed that the sum of $21,031.64 shall be paid by the Defendant into the Registry of the Court, there to be held for the use and benefit of Dale Alan McIntyre, and to be paid to him upon his application immediately after his twenty-first (21st) birthday. It is further ordered that no other payments will be made from said funds except on application to the Court and with notice to both parties hereto.

"It is further ordered, adjudged and decreed that the Defendant is forthwith to turn over to the plaintiff the sum of $18,-000.00 together with interest at 6 percent per annum from October 6th, 1960, in the amount of $1,890.00, or a total of $19,890.-00; * * *."

■ The appellant properly contends that a contract must be construed in its entirety, giving effect to every part thereof, if that be fairly and reasonably possible, and in construing a contract of doubtful meaning, the court properly may consider the subject matter of the contract, the facts and circumstances attending execution thereof, and the apparent purpose which the parties were undertaking to accomplish. The trial court heard evidence concerning the subject matter of the contract and the facts and circumstances attending its execution. The appellant however, fails to specify the particular actions and rulings of the trial court that are claimed to be violative of these rules of construction.

■ The next point in the appellant's brief is a reference to § 362.465, RSMo 1959, V.A.M.S., which provides in substance that any deposit made by or in the name of a minor shall be held for the exclusive right and benefit of the minor, free from the control of all other persons except creditors and that the receipt or acquittance of such minor shall release and discharge the bank with respect to the deposit. We have examined the evidence and find no record of a deposit solely in the name of Dale; hence this statute is not applicable.

The appellant's remaining points relate to the statutory and case law regarding joint deposits and deposits in the name of a person as trustee without notice to the depositary of the terms and existence of the trust. Sections 362.470 and 362.480 provide that the deposit may be withdrawn by any person or persons named as joint depositors in their lifetimes or by the trustee, and that the depositary will be released and protected when the deposit is withdrawn accordingly. In this case we are not concerned with rights of survivorship since all of the parties named as depositors are living.

■ The appellant asserts that the intention of the depositors controls in determining whether an account is jointly held, citing Princeton State Bank v. Wayman, Mo. App., 271 S.W.2d 600, but this is beside the point. Nor is it of controlling importance that some of these accounts were in fact estates by the entirety by reason of the depositors being husband and wife. Where the common law as to an estate by the entirety exists, a bank deposit payable to a husband and wife is presumed to be an estate by the entirety, notwithstanding the state statutes relating to joint deposits. State Bank of Poplar Bluff v. Coleman, 241 Mo. App. 600, 240 S.W.2d 188, 189–190 [2]; Feltz v. Pavlik, Mo.App., 257 S.W.2d 214, 217–218 [3, 4]; McElroy v. Lynch, Mo., 232 S.W.2d 507, 509 [1, 2].

■ Nevertheless, a husband and wife acting jointly may make an effective disposition of property held by the entirety. Shackleford v. Edwards, Mo., 278 S.W.2d 775, 781 [10]. Moreover, when a husband and wife holding property jointly or as an estate by the entirety are divorced, each of them becomes vested with an undivided one-half interest as tenants in common unless there is proof of some other right or interest. Durr v. Vick, Mo., 345 S.W.2d 165, 169 [4]; Allan v. Allan, Mo., 364 S.W.2d 578, 582 [10, 11]; Hahn v. Hahn, Mo., 297 S.W.2d 559, 566 [10]. It follows, therefore, that neither the statutes nor the common law prevented Mr. and Mrs. McIntyre from dividing and disposing of their real and personal property as they saw fit.

The appellant's principal contention is that the joint accounts on deposit with one or both of the parties and their son Dale were not within the purview of paragraph Tenth and were not intended to be set aside for the sole benefit of their minor son. From the testimony it appears that Mrs. McIntyre had suspected that her husband had some savings accounts jointly with Dale and she wanted paragraph Tenth to apply to them. On the other hand, she was unwilling to freeze her own accounts held jointly with Dale although she wanted him to have what remained after her death. The defendant's contention that Dale should have the use and benefit of the money only after her death is inconsistent with the express provision of the paragraph that neither she nor her husband "shall use any of said funds for his or her personal use." Our attention has not been directed to any evidence of an account in Dale's name alone. The appellant's discussion of the nature and attributes of joint accounts and trustee accounts has little to do with the question before us. We are now concerned with an interpretation of a contract provision disposing of such accounts as the parties clearly had a right to do. We must ascertain the intention of the parties in this regard.

■ The intention of the parties to a contract must be ascertained as nearly as may be from within the four corners of the instrument and the surrounding circumstances and conditions; an undisclosed or secret intention of one of the parties cannot be used to vary or contradict the intention expressed in the written instrument. Kerrick v. Schoenberg, Mo., 328 S.W.2d 595, 599 [3]; Wolf v. Miravalle, Mo., 372 S.W.2d 28, 34 [3]. The contract was drafted by Mrs. McIntyre's lawyer from notes made by him and after consultation with his client. The rule that an ambiguous contract should be construed strongly against the party who drew it is one of several subsidiary construction aids and may be utilized when other means of construction fail. Engel v. Cord Moving & Storage Co., Mo.App., 313 S.W.2d 173, 176 [3–5]; Katz Drug Co. v. Kansas City Power & Light Co., Mo.App., 303 S.W.2d 672, 680 [6]; Hamilton Fire Insurance Company v. Cervantes, Mo.App., 278 S.W.2d 20, 23 [3].

■ The phrase of paragraph Tenth with which we are particularly concerned is: "any bank accounts, savings accounts or accounts or property of any kind whatsoever which is in the name of Dale Allen McIntyre at the time of the execution of this agreement". This appears to be quite broad and comprehensive. If Mrs. McIntyre had intended it to apply to accounts in the name of Dale alone or to otherwise restrict it, she could and should have done so in view of the number and variety of existing accounts. The appellant does not contend that the trial court erred in allocating any particular account to Dale's use and benefit. Her position as we understand it would in effect deny setting aside anything for the use and benefit of Dale and thereby render the paragraph practically meaningless. On the record before us, we cannot say that the trial court erred in construing paragraph Tenth to apply to all accounts in which the name of Dale appeared.

The purpose of the agreement as a whole was to divide the property between the husband and wife and to set aside funds for the use and benefit of their son Dale. The intent of the parties with respect to paragraph Twelfth seems quite clear. Under its plain terms Mr. McIntyre was to receive a total of $22,500 as his share. He had in his possession a savings account, a promissory note, and shares of stock, aggregating $4,500, and the court awarded him the balance of $18,-000. Under the contract Mrs. McIntyre received the real estate and the remaining personal property after Mr. McIntyre's share was paid and the accounts for the use and benefit of Dale were set aside. There is no clear-cut evidence as to the total value of the couple's property, but on the record before us it has not been demonstrated that the property division and allocation as made by the contract and construed and enforced by the trial court should not be permitted to stand.

The judgment is affirmed.

All of the Judges concur.