In the ESTATE of William McKinley O'NEAL, Deceased.

A. W. DEANER, Administrator, Respondent,

v.

Peggy WILSON, Administratrix of the Estate of Ollie O'Neal, Deceased, Appellant.

No. 51905.

Supreme Court of Missouri, Division No. 1.

Dec. 12, 1966.

Fred Foster, Jr., Morgan M. Moulder, Camdenton, for respondent.

J. W. Grossenheider, Lebanon, for appellant.

HIGGINS, Commissioner.

Proceeding under Section 473.537, V.A. M.S., in which appellant claims title to one half the personal property, valued at $39,-949.98, in the estate of William McKinley O'Neal, deceased.

William McKinley O'Neal and Ollie O'Neal were husband and wife, having been married in 1944. Mrs. O'Neal died intestate August 27, 1964, survived by her husband, four brothers and a sister, appellant Peggy Wilson. Mr. O'Neal died intestate October 23, 1964, survived by his daughter by prior marriage. Administration of Mr. O'Neil's estate was commenced and the inventory claimed the following personal property items:

1. $7,643.30 "Joint Account," First National Bank of Linn Creek, Camdenton, Missouri, credited to "W. M. or Ollie O'Neal," authorized signatures, "(1) W. M. O'Neal (2) Mrs. W. M. O'Neal or Ollie O'Neal, Either or the Survivor."

2. $25,000 time deposit certificate, First National Bank of Linn Creek, Camdenton, Missouri, issued to "W. M. O'Neal or Ollie O'Neal" and payable to the order of "Either of Them."

3. $4,850 promissory note of Lloyd Wilson and Peggy Wilson, payable to "William O'Neal and Ollie O'Neal, his wife."

4. $2,206.68 checking account, The State Bank, Lebanon, Missouri, credited to "Wm. O'Neal or Ollie."

5. Two $25.00 U. S. Savings Bonds issued to "Mr. William M. O'Neal, P.O.D. Mrs. Ollie M. O'Neal."

6. 1955 Ford automobile, inventory value $175.

7. 1946 Dodge pickup truck, inventory value $25.

Sometime after commencement of administration of Mr. O'Neal's estate, administration of Mrs. O'Neal's estate was begun and the administratrix, appellant Peggy Wilson, instituted this proceeding in the estate of William McKinley O'Neal under Section 473.357, V.A.M.S., to establish a one-half interest in the property inventoried in Mr. O'Neal's estate. The probate court held a hearing and ordered certain of the property transferred to Mrs. O'Neal's estate. Upon appeal and trial *de novo,* Section 472.250, V.A.M.S., the circuit court

found that all the property in question was properly inventoried in the estate of William McKinley O'Neal and denied Mrs. Wilson's petition.

According to Mrs. Wilson, the O'Neals were married in 1944 or 1945 when in their middle forties. Each had been previously married and divorced. Mrs. O'Neal had no children; Mr. O'Neal had one daughter. Mr. O'Neal was two years younger than Mrs. O'Neal. She stated that Mrs. O'Neal gave her husband money in 1944 to go to Kansas City to get a job. Mrs. O'Neal had owned and sold a store at Tonka Junction near Camdenton and at Punkin Center at the junction of Highways 65 and 64. Mrs. O'Neal formerly had been a schoolteacher for six years, her education having been paid for by her brothers and father, all of whom were close to her. The O'Neals lived and worked in Kansas City, then in Ely, Nevada, for a time, and Mrs. Wilson lived there with them. Mr. O'Neal worked in a copper mine at Ely and Mrs. O'Neal worked as a hotel maid. The O'Neals returned to the Lebanon area sometime around 1949, and when Mrs. Wilson returned at a later time the O'Neals were operating the Dove store. "Ollie took care of the store and the groceries on the inside, and when Bill was there he took care of the station part of it." Bill went fishing frequently and he sometimes took naps in the back of the store. They did business with, and deposited the earnings from the Dove store and gasoline station with, the First National Bank of Camden County and The State Bank at Lebanon. It was admitted that title to the Dove store was in William McKinley O'Neal and his wife and that when she died the property "went to him." About two months before Mrs. O'Neal's death, Mrs. Wilson and her husband, Lloyd, leased the store from Mr. and Mrs. O'Neal and gave them the promissory note described previously as Item 3 in the inventory in Mr. O'Neal's estate. The store was leased because "Ollie O'Neal was sick and knew that she couldn't take care of it and Bill couldn't take care of it without her help." Mrs. Wil-

son said also that she asked Mr. O'Neal for the use of the 1955 Ford and he replied, "Go ask Ollie, it is hers."

Harry Lenington had lived in the Dove community since 1898. He recalled a conversation with Mrs. O'Neal shortly after the O'Neals returned from the west in which she inquired if the Dove store was for sale. "They asked me if I would speak to them when I went home that night and ask them how much they wanted for the store. So I did and they told me they wanted $7,500.00." He did not know anything about their financial circumstances, but he later saw her operating the store. In respect to "all the time that Bill and Ollie O'Neal owned the store * * * she was there lots of days that he wasn't."

Lawrance Brown, a brother of Mrs. O'Neal, lived near the Dove store while it was operated by the O'Neals. During those six or seven years he saw Mrs. O'Neal every day. They were close and talked about the "money situation." "I * * * borrowed some money from them and they have given me a check for what I have borrowed. * * * I bought three farms since they came back here, and I borrowed the money from them to help buy them. * * * I would go to them and ask them for the money and I would generally ask him first and he would say go talk to her and whatever she has to say will be all right with me. * * * he would say just write him a check for it * * *." On one occasion Mrs. O'Neal said, " 'Bill, we had better corroborate with the bank in Camdenton to find out what we have there.' And he turned to Ollie and said, 'Write him the check for thirty-five hundred.' " All such loan checks were signed W. M. and Ollie O'Neal or W. M. O'Neal by Ollie O'Neal. His repayments were by check drawn to the order of W. M. and Ollie O'Neal. On an occasion during her last year Mrs. O'Neal, in Mr. O'Neal's presence, told Mr. Brown that she would like to see her brothers and sister "have my part of the estate." He didn't know of any money that Mr. O'Neal had prior to the marriage;

Mrs. O'Neal "had a little money * * * she had some in the State Bank." In respect to working, " * * * she spent all of her time in the store, * * * he spent some time in there, but there was some time spent other places, such as fishing."

Lize Bell had known Mrs. O'Neal for many years. She observed Mrs. O'Neal working in the Dove store. Bill O'Neal was around a lot of the time but was gone some of the time. The store was their only source of income. According to her, "(Bill) said he didn't have anything when they were married and what they had was Ollie's to start with, and he also said that he was willing for it to be divided like Ollie wanted."

Clarence Cook also observed Mrs. O'Neal working in the store every day and Bill would be gone "sometimes when he went fishing." In respect to their property, "I have made the remark to her, what in the world are you going to do with your money, and she said she had brothers and sisters to leave it to."

Roy Brown, another of Mrs. O'Neal's brothers, visited her "almost every month" after she got sick. " * * * she said if anything happened to her that she would want her part of that property and that money divided between her folks and Bill's daughter."

Everett Brown testified that his sister "was always there working," and as to Bill O'Neal, "Well, me and him went fishing quite a bit, quite a few times."

Alvey Brown visited his sister, Ollie O'Neal, about every week after she was sick. He went to the store once to borrow $2500. "They talked a little bit and Bill said, 'If we got it,' and Ollie said, 'Well, I don't see any cause why we shouldn't loan it to them * * *.'" They gave him the money by check and he gave them his note payable to "W. M. or Ollie O'Neal." He paid the note to Bill O'Neal after Mrs. O'Neal's death. He, too, testified that Mrs. O'Neal wanted her property to go to her brothers and sister, and he heard Bill say that he had no money when he married Mrs. O'Neal and "he didn't think he would take anything with him when he left."

Ned Draper, cashier of the State Bank at Lebanon, Missouri, identified several ledger cards and deposit slips in respect to Item 4. Almost all of them were in the name of William O'Neal. The earliest transaction of either, dated September, 1945, was in the name of Mrs. William O'Neal "to replace charge of $19.34. We lost a check and couldn't produce it and we gave her $15.00." The earliest ledger card was in the name of William O'Neal. He did not know the original name of the account or who opened it. On either February 3 or March 3, 1948, W. M. O'Neal deposited $6,988.61 in his name. Sometime between January 30, 1958, and October 2, 1958, the name "Ollie" was added in longhand to the name of W. M. O'Neal on the ledger sheets. Either Mr. or Mrs. O'Neal could draw checks on the account. Ollie O'Neal did not have a separate account in The State Bank.

Cathy Foster, assistant cashier at The First National Bank of Linn Creek at Camdenton, Missouri, identified records of that bank concerning Items 1 and 2. The account, Joint Account 37039.5, was opened May 8, 1951, by a deposit of $1,000 to W. M. or Ollie O'Neal. Their signature card identified the account as that of "W. M. O'Neal or Mrs. W. M. O'Neal or Ollie O'Neal, either or the survivor." Both Mr. and Mrs. O'Neal wrote checks on the account and made deposits to it. Numerous deposits were credited to the account after May 8, 1951. On June 18, 1962, W. M. O'Neal wrote a check on the account to purchase a $20,000 time deposit certificate in the names of W. M. O'Neal or Ollie O'Neal, payable to the order of "either of them" twelve months after date. On June 18, 1963, that certificate was surrendered by endorsement "Wm. or Ollie O'Neal." The principal of that certificate, $800 interest thereon, and a $4,200 check drawn on their account by "W. M. O'Neal by Ollie O'Neal," were used to purchase a $25,000

time deposit certificate dated June 18, 1963, to "W. M. O'Neal or Ollie O'Neal," payable to the order of "either of them" twelve months after date. This second certificate shows an endorsement, "W. M. O'Neal." Item 2 is a $25,000 time deposit certificate issued June 18, 1963, the due date of the previous certificate, also in the names of W. M. O'Neal or Ollie O'Neal and also payable in 12 months to the order of "either of them." The last certificate was outstanding at the time of the death of both Mr. and Mrs. O'Neal. Mrs. Foster recalled that at the time that $20,000 was used to purchase the first time deposit certificate, both Mr. and Mrs. O'Neal were present and "Mr. O'Neal asked the question about the joint account, and if the money would have to be probated if anything happened to either one of them. * * * I explained to them that our interpretation of the joint account meant that either party could at any time draw out any or all of the money and of course, at the death of one of them, it belonged to the other one." They made no change in their account after receipt of this information.

Mabel England, sister of Mr. O'Neal, visited the O'Neals "a lot of times" when they operated the Dove store. "* * * he helped her and worked outside and fixed cars and he done a lot of work." In the fall of 1943 and in 1944 her brother worked at North America Aviation in Kansas City. He married Ollie O'Neal May 19, 1944. Just prior to the marriage "he brung twelve hundred dollars and left it with my mother." Later, he "took it back with him."

Bertha Burrage had known Ollie all her life and knew that she had $900 at a time when she was ill shortly before her marriage to Bill O'Neal.

Beverly Bradford, Mr. O'Neal's daughter, had lived in California since her father's divorce. She went there first with her mother and later married and settled there. She visited Mr. and Mrs. O'Neal in Kansas City in 1944 and she kept in contact with her father through letters which she received "every couple of months. He always knew where I was and what I was doing. He knew all about me all of the time. * * * Ollie also wrote me a lot too."

It was agreed that William O'Neal, W. M. O'Neal, William M. O'Neal, and Bill O'Neal are all one and the same as William McKinley O'Neal, and all described the surviving spouse of Ollie O'Neal. It appears also that the two motor vehicles, Items 6 and 7, were sold by the administrator of Mr. O'Neal's estate without question as to title having been in the name of Mr. O'Neal.

■ Upon trial without a jury the circuit court found and adjudged that the property in question, Items 1 through 7, "was the property of William McKinley O'Neal, at the time of his death, and being personal property the legal title and right to possession passed to A. W. Deaner, Administrator of the estate of William McKinley O'Neal, deceased," and dismissed the petition of Peggy Wilson, administratrix of the estate of Ollie O'Neal, deceased. Such judgment "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Civil Rule 73.01(d) V.A.M.R.

■ Appellant's theory is that Mr. O'Neal did not become the owner of the property upon the death of Mrs. O'Neal because "None of the items * * * conform to the requirements of the statute on joint deposits," Section 362.470, V.A.M.S., and that the evidence did not show that the property was intended to be entirety property or to pass to the survivor.

The evidence clearly warrants finding that the bank accounts, Items 1 and 4, were held throughout the O'Neals' marriage in the names of William McKinley O'Neal and Ollie O'Neal, and it is admitted that they were at all times husband and wife.

Under such circumstances, it is not necessary to look to Section 362.470, supra, relating to joint deposits to see if the deposits meet its requirements, nor to cases such as Jenkins v. Meyer, Mo., 380 S.W.2d 315, In re Patterson's Estate, Mo., 348 S.W.2d 6, and Longacre v. Knowles, Mo., 333 S.W.2d 67, dealing with alleged joint tenancy between persons not husband and wife, because the accounts passed to Mr. O'Neal as entirety property. The rule is that "Where the common law as to an estate by the entirety exists, a bank deposit payable to a husband and wife is presumed to be an estate by the entirety, notwithstanding the state statutes relating to joint deposits." McIntyre v. McIntyre, Mo., 377 S.W.2d 421, 425[7]. The estate by entirety still exists and is not destroyed or lessened by the Missouri statutes. All the common law incidents remain, Smith v. Smith, Mo. App., 300 S.W.2d 275, 281[12]; and the estate by the entirety in a bank account exists "whether the husband or the wife, or both, furnish the money that goes into the account", State Bank of Poplar Bluff v. Coleman, 241 Mo.App. 600, 240 S.W.2d 188, 189[1]. See also Pelsue v. Pelsue, Mo., 367 S.W.2d 487, 492[6], where the funds in an account in the name of "Ed or Agnes Pelsue," who were husband and wife, "were held by said parties as tenants by the entirety." The presumption is present for another reason as to Item 1 because the signature card provides for ownership "with the right of survivorship," and a deposit to husband or wife where the deposit or signature card shows right in the survivor raises a presumption of joint tenancy or estate by the entirety. Feltz v. Pavlik, Mo.App., 257 S.W.2d 214, 218 [5]; In re Baker's Estate, Mo.App., 359 S.W.2d 238, 244[12]. See also Murphy v. Wolfe, 329 Mo. 545, 45 S.W.2d 1079, 1081[2].

■ The presumption is applicable also to the time deposit certificate, Item 2, and the promissory note, Item 3, in that "where a promissory note * * * is endorsed to the husband and wife, there is a presumption that it was intended to create an estate by the entirety. * * * It is true that this is a rebuttable presumption * * * but in order that the presumption be overthrown, the evidence must be clear, strong, unequivocal, and so definite and positive as to leave no room for doubt in the mind of the chancellor." Glynn v. Glynn, Mo.App., 291 S.W.2d 190, 197[5]. Finally, it may be said that the bank accounts, the time deposit certificate and the promissory note, all held as they were in the names of husband and wife, were all subject to the presumption because "[f]ollowing the common law as we do in Missouri * * * all choses in action, payable to husband and wife or to husband or wife are presumed to be estates by the entirety." Cullum v. Rice, 236 Mo.App. 1113, 162 S.W.2d 342, 344[4]; and "[i]t makes no difference if they are not so designated, if in fact, they are husband and wife." State Bank of Poplar Bluff v. Coleman, supra, 240 S.W.2d 1. c. 190[2].

■ The evidence does not overcome the presumption of tenancy by the entirety as to Items 1 through 4. On the contrary, the presumption is strengthened by evidence tending to show, among other things: the original deposit in the State Bank account having been made by Mr. O'Neal with Mrs. O'Neal's name being added at a later date; the original deposit in the First National Bank having been made in the names of both husband and wife; both husband and wife having made deposits and withdrawals from both accounts; purchase and surrender of time deposit certificates in the names of both husband and wife using funds on deposit to both husband and wife; the note having been made payable to both husband and wife representing a loan made from funds on deposit to both husband and wife; other loans to relatives of Mrs. O'Neal having been negotiated with both husband and wife and repaid by checks to W. M. and Ollie O'Neal; title to the store realty having been in both husband and wife and sold by the survivor's ad-

ministrator without contest; both husband and wife having been gainfully employed prior to their marriage and prior to their purchase of the Dove store; both husband and wife having worked at the store and filling station; the knowledge that the account of W. M. or Ollie O'Neal in the First National Bank would go to the survivor upon the other's death and no change being thereafter made. Evidence tending to show that Bill O'Neal went fishing frequently and took naps at the store is not of a quality to overcome the presumption or to rebut the evidence supporting the presumption; and if Ollie O'Neal had intended to favor any of her brothers and her sister she made no move to carry out such intention, even though ample opportunity appears to have been present. There is nothing to indicate that both husband and wife had anything less than complete trust in each other and freedom in the use and handling of their property, and both husband and wife knew, dealt with, and corresponded with Ollie's brothers and sister and Bill's daughter.

 Appellant does not brief any claim to Items 5 through 7. Suffice it to say then that any interest in Mrs. O'Neal in the savings bonds in the name of "Mr. William M. O'Neal, P.O.D. Mrs. Ollie M. O'Neal," Item 5, would arise only upon her surviving Mr. O'Neal; and the motor vehicles, Items 6 and 7, appear to have been titled in Mr. O'Neal only, in that they were successfully sold by his administrator.

Judgment affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All concur.