**Lilli THUMMEL, Petitioner–Respondent,**

v.

**Elmer F. THUMMEL,**
**Respondent–Appellant.**

**No. WD 31217.**

Missouri Court of Appeals,
Western District.

Nov. 3, 1980.

As Modified on Court's Own Motion.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 2, 1980.

Hencke, Forge & Titus, C. John Forge, Jr., Independence, for respondent–appellant.

David M. Harding, Robert F. Redmond, III, Terrell, Van Osdol & Magruder, Kansas City, for petitioner–respondent.

Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.

DIXON, Judge.

These appeals, consolidated in this court, are the culmination of a long standing matrimonial dispute.

One appeal is by the husband from an order of the trial court denying the husband's motion to quash a garnishment on a bank account.[1] The second is from a trial court order finding the husband guilty of civil contempt for failure to comply with an order of child support and maintenance.[2]

A narration of the history of the disputes of the parties is necessary for an understanding of the issues.

The marriage of Elmer and Lilli Thummel was dissolved on July 5, 1974. The trial court awarded custody of the two children of the marriage to the wife and ordered the husband to pay $250 a month per child for support, and $275 a month to the wife for maintenance.

Except for the year 1975, the husband made the child support payments from 1974 until the date of trial. The husband made no maintenance payments after November of 1974. This put the husband $4,250 in arrears on the child support and $15,125 in arrears on his maintenance at the time of trial.

Because of the husband's failure to file the exhibits which he had offered in evidence at trial, some uncertainty exists as to what occurred between the parties prior to the instant dispute. Drawing upon the briefs of the parties, it would appear that the husband filed a motion to modify in December of 1975. At that time, the wife was represented by different counsel. The

parties talked about working out a settlement of the maintenance and child support orders. The husband's attorney drew a settlement agreement, but due to a disagreement as to the amount owed, the wife refused to sign it.

The husband asserts that the negligence of the wife's ex–attorney in failing to approve the agreement was the cause of the lack of signatures on it. There was a letter from the ex–attorney to the court explaining the failure. Although an exhibit at trial, it has not been filed here.

The husband's modification motion was then *dismissed.* The husband tendered to the wife several different sums under the unsigned and unapproved settlement agreement; but due to a dispute by the wife as to the amount owed, she refused to accept them.

The wife, on the advice of counsel, then filed two motions to set aside the earlier purported modification of the awards, and both were overruled. The wife then changed attorneys, and the present action ensued. This recital from the briefs is necessary to understanding of the evidence subsequently set forth.

In January of 1979, the wife garnished an account at Boatmen's Raytown Bank held by the husband in the name of Thummel Construction Company. The garnishee answered and paid into court $15,798.00. The husband filed a motion to quash the execution. At the hearing on the motion to quash, testimony was offered. A summary recital of that evidence in the light of the

---

1. The cases have conventionally held that an order directing payment into court after overruling a motion to quash a garnishment does not constitute a final judgment. *Baker v. Riss International Corporation,* 573 S.W.2d 404 (Mo. App.1978); *Household Finance Corporation v. Seigel–Robert Plating Company,* 483 S.W.2d 415 (Mo.App.1972); *Orf v. Computer Institute, Inc.,* 480 S.W.2d 73 (Mo.App.1972). Only when the money is ordered paid out of court or a judgment is entered against the garnishee to pay into court upon refusal does a final judgment occur. *Kalvar Corporation v. Burrow,* 493 S.W.2d 48 (Mo.App.1973); *Baker v. Riss, supra.* All of the foregoing cases proceed upon

the analysis of garnishment as a separate, independent action. Nonetheless, the matter is now at rest. *In re Marriage of Haggard,* 585 S.W.2d 480, 481 (Mo. banc 1979), squarely holds that the overruling of a motion to quash an execution and garnishment is an appealable order.

2. Both appeals arose from one circuit court case. Both notices of appeal were filed under one number in this court. Subsequently, upon request of the parties, a formal order of consolidation of the two notices of appeal was made. There were hearings separated in time on each of the issues.

statements in the briefs will lend understanding to the issues posed.

The recital will in some respects appear out of order because of the anomaly of the wife first presenting evidence instead of the movant husband and also because the wife anticipated the defenses the husband would offer to defeat the garnishment.

Before any evidence was taken, the parties offered their respective documentary evidence as exhibits. The wife's exhibits have been filed, but the husband's have not.

The wife then testified as to the award of child support and maintenance, and the status of the payments by the husband. The amounts due on child support ($4,250) and maintenance ($15,125) were admitted by exhibit without objection, showing a total due on the judgment of $19,375.00.

The wife then testified in anticipation of the husband's claim of an agreement to abate. She recalled attending a hearing in 1975, although it was one of several trips to court for her in the last four years. She inferred that the hearing took place between the attorneys and the judge; she expressly stated that there was no agreement reached at that time to "stop" or "abate" any maintenance payments, nor was there a "waiver of back support payments that were due."

On cross–examination, the wife admitted that she filed two "motions for modification," to set aside the purported earlier modification, one in 1977 and one in 1978. These motions were received into evidence, but they–like the other exhibits of the husband–have not been submitted here. The wife stated that she read these "motions," but she was unsure of some of the words.

The wife stated that the attorney who drafted the motions told her that filing them "would be the only way to get the money that was owed to her." The wife denied that her attorney approached her with several settlement offers made by the husband, but she did remember a check being tendered for $6,000 which she refused.

The bank records disclosed that the husband closed an account at the Noland Road Bank in the name of Thummel Construction Company just before the marriage break–up. It was the wife's belief that the husband transferred this account to the Boatmen's Raytown Bank, and this was the account she had garnished.

During the marriage, the wife kept the books of the company and made out the checks. She denied being a part owner of the business and was not sure whether or not she released an interest in the business in the dissolution settlement. The wife stated that both she and the husband wrote checks on the Thummel Construction account during the marriage, mostly for business, but some checks were for household expenses.

The wife then offered the deposition testimony of the husband. The husband classified the business as a "sole proprietorship." The husband eventually placed his current wife's name on the Thummel Construction account at the Boatmen's Bank. At the time the current wife's name was placed on the account, she was working for him as a secretary, and was not his wife.

Deposition testimony of bank officers from the two banks was offered by the wife. Mrs. Brown, a Vice–President from the Noland Road Bank, stated that Thummel Construction had a business account with her bank listing both the husband and the wife as signators. This account was closed in 1973, and a new account opened in the same name showing only the husband as signator. It was stipulated that the funds in the new account came from the old. The new account was closed in 1974.

Brown also testified that the husband and wife also had a personal account in their joint names listing both as signators. This account, when opened, was marked "joint and survivor account," and Brown stated the bank would pay the survivor if one of the account holders died. This account was closed in 1973.

Brown further testified that the husband and his new wife had a joint account at the bank for over two years, listed in his name

and her maiden name, and then changed at an unspecified time to both their married names. This account had been closed in 1977.

Mrs. Benckeser, an assistant vice president of the Boatmen's Bank of Raytown which held the garnished account, was also deposed. Benckeser stated that the husband opened an account at the Bank in the name of Thummel Construction, showing him and Barbara Enyart (his current wife) as signators. Three days later she was dropped as a signator, with only the husband's name remaining.

In 1974, Thummel added his current wife's name to the Thummel Construction account as another signator. This was the account garnished. The back of the card which added Thummel's new wife contained a survivorship agreement signed by Thummel and his new wife. The front of this card, however, contained the words, "title of account," followed by "Thummel Construction Company;" and at the top following the words, "authorized signatures," the husband and new wife had affixed their signatures.

On direct, the husband stated that both he and his current wife were signators on the Thummel Construction account and had been signators before their marriage. The new wife drew the majority of the checks on the account.

On cross-exam, the husband stated the account was first opened in the name of Thummel Construction, and he was the lone signator. Then his current wife was added as a signator in her maiden name; and after they married, her new name was added. The husband admitted treating his current wife as an employee of the company, and he paid her wages for her work. He treated himself as an owner of the company and filed self-employment tax forms. He stated his current wife did not give him any consideration for putting her name on the account.

The evidence was that the Thummel Construction Company account was created originally from the Raytown Bank account and that deposits to it represented payment on accounts receivable of the Thummel Construction Company jobs.

The husband offered no evidence on the purported agreement to modify or abate the maintenance or child support.

The court found that no modification agreement had been entered into and that the Boatmen's Bank account was not held in a tenancy by the entirety by the husband and his new wife. The motion to quash the garnishment was overruled. The funds garnished were ordered paid to the Court Administrator and were, thereafter, pursuant to court order, paid to the wife.

Before relating what additional evidence was submitted on the contempt hearing, the issues posed by the first appeal in the garnishment matter will be considered.

It is the husband's position that the bank account was not subject to execution for two reasons. First, there had been a modification of the maintenance award in December of 1975 absolving him of any further obligation to pay; and second, that the account was held in joint tenancy with his present wife, and it was, therefore, not susceptible to execution.

*The Modification Defense*

Apparently the husband filed a motion to modify the maintenance award, and there was a hearing on the motion in December of 1975. The transcript of the hearing, a "note" made by the hearing judge, and an "order" submitted by the husband's attorney after the hearing were all received into evidence at trial. However, the husband has not favored this court with these exhibits on appeal, and their content may only be gleaned from the briefs and the indirect references in the testimony as set forth above.

As noted, the defendant introduced no evidence regarding the modification. The only evidence concerning the modification came in on examination of the wife or was embodied in defendant's exhibits which have not been presented to this court for review.

" '[W]here, as here, exhibits are omitted from the transcript and are not filed with the appellate court ... [Rule 82.15; now Rule 81.15] the intendment and content of such exhibits will be taken as favorable to the trial court's ruling and as unfavorable to appellant.' *Lange v. Baker*, 377 S.W.2d 5, 7[2–4] (Mo.App.1964)." *First Bank & Trust Co. v. Montgomery*, 570 S.W.2d 346, 348 (Mo.App.1978).

■ An appellate court has the discretionary right to direct, on its own motion, the clerk of the trial court to send up original documents or exhibits, but the court is under no obligation to do this. Rule 84.03. *Lange, supra; First Bank, supra.*

Thus, without the exhibits which purportedly contain the modification agreement (an assertion which the trial court expressly found against defendant), the only evidence before this court of the alleged modification is the testimony of the plaintiff in this case who *denied* entering any modification agreement.

Defendant's contention is that the finding of the trial court that there was no modification of the maintenance agreement is against the weight of the evidence.

■ When a judgment in a court–tried case is attacked on the ground of insufficiency of evidence, the appellate courts are constrained to use caution in setting aside the judgment and may only do so with a firm belief that the judgment is wrong. *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976).

■ In light of this scant and contradictory evidence of an agreement, it cannot be said that a firm belief that the judgment was wrong has been created here. Further, the evidence of the claim of modification *was* before the trial court, the exhibits being in evidence. The trial court expressly found against any assertion that a modification agreement had been made. There is no basis to disturb the trial court judgment on the basis of it being against the weight of the evidence.

3. The parties have cited § 362.470 RSMo 1978, as amended by Senate Bill 240, effective September 28, 1977. The statute before amend-

### The Entirety Property Defense

■ It is the husband's position that the bank account was "entirety property" held by him and his second wife, and therefore not subject to execution by his former wife. The former wife concedes that entirety property is not subject to execution where the judgment runs solely against the husband. *Merrill, Lynch, Pierce, Fenner and Smith, Inc. v. Shackelford*, 591 S.W.2d 210 (Mo.App.1979).

The precise issue framed is whether this bank account was entirety property. Both parties rely on an interpretation of § 362.470 RSMo 1978, to support their arguments.[3] Section 362.470 RSMo 1969, before its amendment, in relevant part, reads:

"When a deposit is made by any person in the name of the depositor and any one or more other persons, ... and in form to be paid to any one or more of them, or the survivor or survivors of them, the deposit thereupon and any additions thereto ... shall become the property of these persons as joint tenants."

Prior to 1972, compliance with this statute was deemed to create a rebuttable presumption of joint tenancy, which could be overcome by competent evidence to the contrary. *Melton v. Ensley*, 421 S.W.2d 44 (Mo.App.1967).

However, in *In re Estate of LaGarce*, 487 S.W.2d 493 (Mo. banc 1972), the court, in construing the sister statute of § 362.470 relating to savings and loans (§ 369.150), said:

"It is our view that the statute creates what might be described as a statutory joint tenancy which should be given effect without consideration of the strict common–law requirements mentioned in the cases.... The statute is clear and needs no construction. It is our view that if the statute is complied with, in the absence of fraud, undue influence, mental

ment is given above; the amendment does not affect this case.

incapacity or mistake, the survivor will become the owner of the account." *LaGarce, supra* at 500–01.

Subsequent holdings have expressly made the rule in *LaGarce* applicable to § 362.470. *Matter of Estate of Parker*, 536 S.W.2d 25 (Mo. banc 1976).

It is the wife's position that § 362.470 RSMo 1978 requires the presence of two elements before the "statutory joint tenancy" can be created. First, there must be a deposit made in the name of the depositor and any one or more other persons, and second, it must be made in form to be paid to any one or more of them. This position is supported by the plain language of the statute.

The account was opened on September 1, 1973 in the name of Thummel Construction Company, showing Elmer Thummel and Barbara Enyart (second wife) as authorized signators. The survivorship agreement on the reverse side of the card was not signed. Three days later, Barbara Enyart's name was removed as an authorized signator, and the account remained in the name of Thummel Construction Company, with Elmer Thummel as the only authorized signator for the next 13 months.

In October of 1974, three months after Elmer and Lilli Thummel's marriage dissolution, Barbara Thummel (the second wife) was added as an authorized signator on the account. The back of this card showed Barbara as Elmer's wife, and the survivorship agreement was signed by both Elmer and Barbara. However, the account remained in the name of Thummel Construction Company.

■ Thus, the first requirement of § 362.470, that the deposit be made in the name of the depositor and any one or more other persons, is not met, and the statutory joint tenancy is not created.

While there do not appear to be any Missouri cases on point, the rationale in *Hilke v. Bank of Washington*, 251 S.W.2d 963 (Mo.App.1952), supports an interpretation of the statute requiring both elements.

In *Hilke*, defendant had an account in the name of his painting firm, with him and his wife shown as authorized signators. In denying defendant's claim that the account was joint and not subject to garnishment, the court said:

"Nor do the words, 'Edward J. or Helena Hilke', on the records below the firm name indicate a joint account. Section 362.470 RSMo 1949, V.A.M.S., sets out what shall constitute a joint account, and the two names disjunctively joined do not meet its requirements." *Supra* at 965–66.

The court thus held that the parties must both appear as owners for the statute to apply. *Pollock v. Brown*, 569 S.W.2d 724 (Mo. banc 1978) also infers that the account must be in the name of the depositor *and* the other tenant to qualify as a statutory joint tenancy.

■ Thus, the fact that the garnished account is not and has never been "in the name of" Elmer *and* Barbara Thummel precludes a finding that it complied with the requirements of § 362.470 which creates a statutory joint account.

### Common–Law Tenancy by Entirety

■ While the parties do not raise the issue, the holding of *In re Estate of Fugett*, 564 S.W.2d 628 (Mo.App.1978), that even though a statutory joint tenancy is not created, the possibility of a common–law tenancy arising, must be considered. Where § 362.470 is not complied with,

"[t]he rule to be applied is stated in *Fulton v. Fulton*, 528 S.W.2d 146, 157, 158[28–31] (Mo.App.1975):

'It matters not that the account did not designate them as being husband and wife,[4] for they were that in fact at all times herein concerned.... Under such conditions and *irrespective of statutes relating to joint bank accounts*, the account and deposits thereto are

---

4. "The checking account in the Alton Bank was in the names of 'J. C. Fulton or Grace L.'"

*Fulton v. Fulton*, 528 S.W.2d at 157.

presumed to be held in an estate by the entirety whether the husband or the wife or both furnished the monies that went into the account. . . . Although the presumption is rebuttable, the evidence to overthrow it must be so strong, clear, positive, unequivocal and definite as to leave no doubt in the chancellor's mind.'" *Supra* at 631. (Citations omitted; emphasis supplied).

The opinion cites *In re Estate of Jeffries*, 427 S.W.2d 439 (Mo.1968) and *In re Estate of O'Neal*, 409 S.W.2d 85 (Mo.1966) for the proposition that a common–law tenancy by the entirety could exist. However, in all three of the cited cases, *Fulton; O'Neal*; and *Jeffries*, the accounts were *in the name of* both the husband and wife.

Although there is language in *McIntrye v. McIntrye*, 377 S.W.2d 421 (Mo.1964), which says that "A bank deposit *payable to* a husband and wife is presumed to be an estate by the entirety," the cases in support of it all involve factual situations in which the account was *in the name of* the husband and wife.

Whether considered as under the statute or the common–law, the deposit is not in the name of a person *and* another.

*The Issues on the Validity of the Contempt Citation*

The trial court's judgment in the garnishment action was rendered on September 6, 1979, ordering the Boatmen's Raytown Bank to pay the $15,795 into the court for disbursement to the wife. On November 6th, the court conducted a hearing on the civil contempt show cause order directed to the husband. A balance was owing of $4,180 after crediting the $15,795 to the accrued judgment. The wife had received no payments of maintenance subsequent to the trial court's judgment on September 6.

At the contempt hearing, the wife testified that she was awarded maintenance and child support, had received no maintenance payments and only a portion of the child support, and that she hadn't received any payments from the husband after the judgment rendered on September 6, 1979.

The wife was again confronted with a "transcript," from the alleged modification hearing, a "motion" she had later filed, and an "order" of the trial court on the motion, which she denied remembering. Another motion, signed by the wife, was also introduced. As in the earlier hearing, this evidence was received in the form of exhibits, was only vaguely referred to, and has not been presented here on appeal. The trial court received it on the grounds that it was relevant to the question of the willful failure to pay.

The wife admitted the husband had told her that the maintenance and support awards exceeded his income at the time of the hearing in 1975.

The husband testified that he filed a motion to modify the child support order in December of 1975, because the order exceeded his income. He testified that at the hearing the wife agreed to forego the maintenance payments if he would make the child support payments. He said he was current on his child support payments at the time of contempt hearing. He relied on the purported agreement as his reason for not paying the maintenance.

The husband said he had attempted to pay the wife according to the agreement, but she refused payment.

The husband referred to a "contract" between him and his wife which released him from any maintenance obligations which he admitted neither husband nor wife signed, although he *believed* the judge signed it. He stated he had made no maintenance payments since September 6, 1979.

Mr. Forge, the husband's attorney, was sworn as a witness. Forge introduced a "letter from the wife's ex–attorney to Judge Hanna explaining the lack of signing on the court order of December 15, 1975." Forge also testified to amounts tendered to the wife's ex–attorney to compromise the awards, but admitted these were refused.

The court then found the husband in contempt, due to his failure to show facts to excuse his non–compliance, failure to show an inability to pay, and failure to show cause why he should not be held in con-

tempt. He was held in civil contempt of the 1974 maintenance and support order for willfully and intentionally disobeying the order. The husband's contempt citation was held in abeyance for thirty days, and he posted bond for the amount due on the judgment.

The husband, in a single point attacking the contempt order, contends that the husband was entitled to rely on the "original and subsequent actions" of the circuit court modifying the decree and that the tenders of payment negated a willful and intentional disobedience of the court's order.

The argument portion of the brief is almost indecipherable, but is apparently based upon the husband's belief that the documents which have not been filed in this court somehow provide him with a good faith defense to a citation for contempt.

 There is no doubt that the procedure in this case has caused some confusion, but the husband has simply failed to show by any competent evidence in this record that he was acting in good faith in refusing to make payments. This is particularly true after the trial court had rejected on a factual basis his claim of a modification of the divorce proceedings in the prior garnishment hearing. The claim of the husband in the contempt action is but a reiteration of the claim made in the garnishment action. The trial court has found no modification, and the husband has presented nothing to show any deficiency in that finding.

Trial courts are empowered to punish by imprisonment for contempt the failure of a person to comply with orders for payment of maintenance and child support. *State ex rel. Stanhope v. Pratt*, 533 S.W.2d 567 (Mo. banc 1976); § 452.345 RSMo 1978; *LeBeau v. LeBeau*, 556 S.W.2d 204 (Mo. App.1977).

The trial court had the power to hold defendant in contempt once it became convinced that husband was financially able to make the payments *or* that he intentionally and contumaciously placed himself in a position that he could not comply with the court's orders. *Stanhope, supra.* Here there is ample evidence of the husband's ability to pay. His income tax returns for the years 1975 through 1978, which were introduced into evidence, show gross income of $10,213; $24,424; $41,505; $27,415, respectively.

"A motion for civil contempt is addressed to the sound discretion of the trial court, and the reviewing court will not disturb such a judgment in the absence of a clear abuse of discretion." *Hoog v. Hoog*, 545 S.W.2d 303, 306 (Mo. App.1976).

It cannot be said that an abuse of discretion, which is defined as

" ' "an erroneous finding and judgment which is clearly contrary to the facts and circumstances before the court. A judicial act which is untenable and clearly against reason and which works an injustice." ' " *Beckman v. Beckman*, 545 S.W.2d 300, 310 (Mo.App.1976), citing *State v. LeTourneau*, 515 S.W.2d 838[6] (Mo.App.1974).

has occurred here. *See also In re Marriage of Pender*, 593 S.W.2d 230 (Mo.App.1979).

The burden was on defendant to prove his inability to pay, and having failed to carry this burden, the judgment of the trial court must stand. *In re Marriage of Vanet*, 544 S.W.2d 236 (Mo.App.1976).

Both judgments are affirmed.

All concur.